[Cite as *State v. Wayman*, 2019-Ohio-1194.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2018-06-045<br>CA2018-06-046 |
| | : | |
| - vs - | : | O P I N I O N<br>4/1/2019 |
| | : | |
| BRIAN KENT WAYMAN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case Nos. 2017 CR 000394 and 2017 CR 000719

D. Vincent Faris, Clermont County Prosecutor, Nick Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103 for appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103 for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Brian Kent Wayman, appeals from his conviction in the Clermont County Court of Common Pleas for operating a vehicle while under the influence of alcohol or drugs. For the reasons outlined below, we affirm Wayman's conviction.

**Facts and Procedural History**

{¶ 2} On June 27, 2017, the Clermont County Grand Jury returned an indictment charging Wayman with operating a vehicle while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a).[1]  Pursuant to that statute, and as relevant here, no person shall "operate" any vehicle, if, at the time of the operation, the person is under the influence of alcohol, a drug of abuse, or a combination of them.

{¶ 3} According to the bill of particulars, the charge arose after Wayman was discovered by Officer Jeffrey Wolf with the Goshen Police Department "passed out" in his vehicle with an open 16 ounce can of beer in the center console cupholder.  The vehicle was still running and in gear facing against traffic "stopped halfway on pavement and halfway on grass with its brake lights illuminated."  Upon being discovered by Officer Wolf, the record indicates Wayman exhibited a moderate odor of an alcoholic beverage on his person, bloodshot and glassy eyes, and slurred speech.  The record also indicates Wayman admitted to consuming three beers "earlier but not recently."

{¶ 4} After being removed from the vehicle, Wayman agreed to submit to standardized field sobriety tests: the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test.  Wayman exhibited multiple clues on each of the three tests.  Two additional tests, the modified Romberg balance test and the lack-of-convergence test, were also performed.  These two additional tests also indicated Wayman was impaired.  Wayman thereafter admitted to Officer Wolf that, if tested, he would test positive for marijuana.

---

1. As part of this indictment, Wayman was also charged with operating a vehicle while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(2)(a).  A subsequent indictment was thereafter returned charging Wayman with possession of heroin and aggravated possession of drugs.  Due to the arguments raised herein, and for purposes of this appeal, this court will limit its analysis to the single count charging Wayman with operating a vehicle while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a).

{¶ 5}  Wayman consented to the search of his vehicle.  During the search, officers discovered "five plastic snorting straws, 3 clear cellophane wrappers containing white powder residue, and a small piece of paper containing an off-white substance."  The record indicates the white powder residue and off-white substance located in the vehicle tested positive for both heroin and fentanyl.  The record also indicates Wayman had previously been convicted of ten prior offenses for operating a vehicle while under the influence of alcohol or drugs.

{¶ 6}  A one-day bench trial was held on January 30, 2018.  During trial, Wayman argued the evidence was insufficient to prove beyond a reasonable doubt that he had "operated" the vehicle while under the influence of alcohol or drugs.  In support, although acknowledging he was impaired as a result of snorting heroin/fentanyl prior to when Officer Wolf discovered him "passed out" in the vehicle's driver's seat, Wayman argued the evidence proved only that he became impaired sometime after he pulled the vehicle over to the side of the road and parked.  Therefore, according to Wayman, the state failed to prove he had "operated" the vehicle while under the influence of alcohol or drugs as that term is defined by R.C. 4511.01(HHH).

{¶ 7}  On April 25, 2018, the trial court issued a detailed 19-page decision finding Wayman guilty of operating a vehicle while under the influence of alcohol or drugs.  In so holding, the trial court soundly rejected Wayman's claim that he became impaired only after he pulled the vehicle over to the side of the road and parked.  The trial court instead was "convinced that the defendant used the heroin before he drove his vehicle [to where he was discovered by Officer Wolf], where he stopped and fell asleep or became unconscious." The trial court based its decision on four findings.

{¶ 8}  Initially, the trial court rejected Wayman's claim and found Wayman guilty

upon finding:

> First, [the witnesses who first noticed the vehicle] was so alarmed in observing the defendant's driving and idling on the road that he believed the defendant to be impaired and in need of emergency assistance. [The witness] believed this even while the defendant was still sitting upright in his car. His description of the defendant's driving and parking seems consistent with the description of someone who has *already* used drugs. The defendant idled in his car in the middle of the road in front of [the witness'] home, and then "ran up" the other side of the road and stopped in the opposite direction of traffic. The defendant chose to rest his car in an area where parking was prohibited and with the car still halfway on the road.

(Emphasis sic.)

**{¶ 9}** The trial court also rejected Wayman's claim upon finding:

> Second, given the time constraints the court does not believe that the defendant had time to use the drugs during the 30 seconds or less that [the witness] was gone to get his cell phone in his home. The defendant testified that he used cellophane to crush the heroin/fentanyl and then snorted it.[2] Because he was found with the cellophane in his pocket and the remaining heroin/fentanyl in his console inside of a prescription pill bottle, he must have also needed time, after crushing and snorting the drugs, to put these items away before [the witness] returned and found him lying across the front seat. The court does not believe that the defendant could have started and concluded this process all in 30 seconds or less.

**{¶ 10}** The trial court next rejected Wayman's claim upon finding:

> Third, the place the defendant chose to stop would have been an unlikely and poor spot to stop to use drugs. The defendant had been idling in front of [the witness], who was standing in his driveway, and [Wayman] even drove within 10 feet of [the witness] at one point. The defendant then chose to stop his car, and, according to the defendant's version of events, used the heroin/fentanyl in a spot and at a time when there was another person actively about in his car's vicinity. Given the fact that the defendant idled in the road 10 feet away from [the witness] for a period of time, it is likely he was aware that [the witness] was in

---

2. This court was confused as to how Wayman could have used "cellophane" to crush the heroin/fentanyl before snorting it. Our confusion, however, is alleviated by Wayman's testimony indicating that he "crush[ed] 'em up in the cellophane, and snort[ed] 'em."

and around his driveway. The defendant being less than discrete about his presence. Stated differently, the court does not believe that the defendant chose a conspicuous spot to use illegal drugs that was directly in front of a third party witness.

{¶ 11} Finally, the trial court rejected Wayman's claim and found Wayman guilty upon finding:

> Moreover, the court does not believe the defendant's testimony that he placed his car in park and turned it off before using the heroin. Instead, the court believes [the witness'] testimony that the car was left running and Officer Wolf's testimony that the car was in gear. The court finds it doubtful that the defendant would have gone through the process of using drugs without at least placing his car in park first. In sum, the court believes that the defendant used the heroin/fentanyl, drove his car on [the street where it later came to a stop], realized he was having a medical issue due to the unknown fentanyl, and just barely pulled over to the side of the road in time to lose consciousness or fall asleep.

{¶ 12} On June 12, 2018, the trial court held a sentencing hearing. After hearing mitigation and allocution from Wayman and his trial counsel, the trial court sentenced Wayman to serve a total of 36 months in prison. The trial court also ordered Wayman to pay a fine of $1,350, notified Wayman that he would be subject to an optional postrelease control term of up to three years, and advised Wayman that his driver's license would be suspended for a period of 15 years.

**Appeal**

{¶ 13} Wayman now appeals from his conviction, raising two assignments of error for review. In support of his two assignments of error, Wayman initially argues his conviction was not supported by sufficient evidence since the evidence did not prove beyond a reasonable doubt that he was "operating" a vehicle while under the influence of alcohol or drugs. Wayman also argues the trial court's decision finding he was "operating" a vehicle while under the influence was against the manifest weight of the evidence. We disagree.

- 5 -

**Standard of Review**

{¶ 14} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The test for sufficiency therefore "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 15} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio- 2472, ¶ 34. This court will overturn a conviction due to the manifest weight of

the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio- 818, ¶ 43.

{¶ 16} "'The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.'" *State v. Couch*, 12th Dist. Butler No. CA2016-03-062, 2016-Ohio-8452, ¶ 9, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). However, although the two concepts are different, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

### R.C. 4511.19(A)(1)(a): Operating a Vehicle

{¶ 17} As noted above, Wayman was convicted of operating a vehicle while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a). This statute provides that no person shall "operate" any vehicle, if, at the time of the operation, the person is under the influence of alcohol, a drug of abuse, or a combination of them. Therefore, based on the plain language of R.C. 4511.19(A)(1)(a), to prove the offense "the state must show the confluence of the ingestion of [alcohol or] drugs and the operation of the vehicle." *State v. Anderson*, 1st Dist. Hamilton No. C-160920, 2017-Ohio-8641, ¶ 33.

### R.C. 4511.01(HHH): Definition of "Operate"

{¶ 18} The only issue in dispute is whether the trial court erred by finding Wayman was "operating" or had "operated" a vehicle while under the influence of alcohol or drugs. Pursuant to R.C. 4511.01(HHH), the term "operate" means "to cause or have caused

movement of a vehicle, streetcar, or trackless trolley." The statute "employs both the present tense ('to cause') and the past tense (to 'have caused') in relation to the movement of a vehicle. The past tense indicates an action already completed." *State v. Anderson*, 1st Dist. Hamilton No. C-160920, 2017-Ohio-8641, ¶ 16. "[T]o 'have caused' movement of a vehicle is a fact that may be proved by circumstantial evidence, which inherently possesses the same probative value as direct evidence." *State v. Halpin*, 2d Dist. Clark No. 07CA78, 2008-Ohio-4136, ¶ 24, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991).

**{¶ 19}** The definition of "operate" under R.C. 4511.01(HHH) requires "actual movement" of a vehicle and not merely "potential movement." *State v. Burnett*, 2d Dist. Clark No. 2017-CA-44, 2018-Ohio-109, ¶ 16. The statute therefore eliminates from consideration "drunk radio listeners, or people who use their cars as a four-wheeled, heated hotel room" from being convicted of operating a vehicle while under the influence of alcohol or drugs. *State v. Schultz*, 8th Dist. Cuyahoga No. 90412, 2008-Ohio-4448, ¶ 19. "[A] person who is found passed out in his vehicle on the side of the highway" may be convicted of operating a vehicle while under the influence of alcohol or drugs "because the jury could infer that the vehicle was moved to that location." *Id.* at ¶ 25.

**{¶ 20}** There can be no question that Wayman operated the vehicle prior to when he was found by Officer Wolf "passed out" in the vehicle's driver's seat. Wayman admitted as much in his testimony before the trial court. But, was there sufficient evidence to prove beyond a reasonable doubt that Wayman had "operated" the vehicle while under the influence of alcohol or drugs before Officer Wolf's arrival? Based on a full and thorough review of the record, we find that there was ample evidence, both direct and circumstantial, to support the trial court's decision.

**{¶ 21}** The record is clear, and Wayman does not dispute, that Officer Wolf found

him impaired and under the influence of heroin/fentanyl "passed out" in the vehicle's driver's seat with an open 16 ounce can of beer in the center console cupholder. The record is also clear that when Officer Wolf found Wayman "passed out" that the vehicle was still running and in gear parked facing against traffic stopped halfway on the pavement and halfway on the grass with its brake lights illuminated. Similar facts have been found sufficient for the trier of fact to conclude beyond a reasonable doubt that an impaired offender had "operated" a vehicle while under the influence of alcohol or drugs. These cases include, but are not limited to, the following.

> 1. *State v. Anthony*, 5th Dist. Stark No. 2015CA00226, 2016-Ohio-2905, ¶ 23-25 (impaired offender had "operated" a vehicle that was found disabled on a public street where a witness had observed the offender in the driver's seat on two separate occasions ten minutes apart and where no one else at the scene claimed to have driven the vehicle to the location where the vehicle had broken down);
>
> 2. *State v. Jamison*, 9th Dist. Summit No. 27664, 2016-Ohio-5122, ¶ 34 (impaired offender had "operated" a vehicle that was still running and in gear where the offender was found "slumped over and sleeping" in the driver's seat with the left turn signal activated);
>
> 3. *City of Cleveland v. Sheppard*, 8th Dist. 103166, 2016-Ohio-7393, ¶ 22-24 (impaired offender had "operated" a vehicle that was still running with the key in the ignition that was improperly parked halfway on the street where the offender was found asleep in the driver's seat);
>
> 4. *City of Cleveland v. Turner*, 8th Dist. Cuyahoga No. 99183, 2013-Ohio-3145, ¶ 14-15 (impaired offender had "operated" a vehicle that was found stopped in the middle of the road blocking two lanes of traffic where the offender was "sitting in the driver's seat with the keys in the ignition, making noises and pretending to drive the car");
>
> 5. *State v. Barnard*, 5th Dist. Stark No. 2010-CA-00082, 2010-Ohio-5345, ¶ 30-32 (impaired offender had "operated" a vehicle that was found stranded on a median after having run over a number of orange traffic cones where the offender was "alone and strapped into the driver's seat");

6. *State v. Varholic*, 8th Dist. Cuyahoga No. 89627, 2008-Ohio-962, ¶ 34-35 (impaired offender had "operated" a vehicle observed by a witness driving erratically prior to the responding officer finding the vehicle parked on the wrong side of the street with the vehicle still running where the offender was "slumped behind the wheel" with his eyes closed and emanating a moderate odor of an alcoholic beverage on his person);

7. *State v. Adams*, 3d Dist. Crawford No. 3-06-24, 2007-Ohio-4932, ¶ 19-22 (impaired offender had "operated" a vehicle found stopped at a stop sign in the middle of the street blocking traffic with the vehicle still running where the offender was "slooped" over the steering wheel and emanating a strong odor of an alcoholic beverage on his person).

**{¶ 22}** Despite analogous caselaw directly contradicting Wayman's claims, Wayman nevertheless argues his conviction must be reversed since his testimony was the only evidence presented at trial that placed a specific time on when he snorted the heroin/fentanyl. This may very well be true. But the trial court is not required to accept Wayman's testimony that he snorted the heroin/fentanyl only after he pulled the vehicle off to the side of the road and parked. The trial court, as the trier of fact, was free to believe all, part, or none of Wayman's testimony. *State v. Davis*, 12th Dist. Butler No. CA2017-04-049, 2017-Ohio-8535, ¶ 20. This includes Wayman's testimony as to when he claims he snorted the heroin/fentanyl.

**{¶ 23}** The trial court found Wayman's testimony that he snorted the heroin/fentanyl only after he pulled the vehicle off to the side of the road and parked was not credible. Again, as the trial court found:

> [T]he court does not believe the defendant's testimony that he placed his car in park and turned it off before using the heroin. Instead, the court believes [the witness'] testimony that the car was left running and Officer Wolf's testimony that the car was in gear. The court finds it doubtful that the defendant would have gone through the process of using drugs without at least placing his car in park first. In sum, the court believes that the defendant used the heroin/fentanyl, drove his car on [the street where the

- 10 -

vehicle ultimately came to a stop], realized he was having a medical issue due to the unknown fentanyl, and just barely pulled over to the side of the road in time to lose consciousness or fall asleep.

The record fully supports the trial court's findings.

{¶ 24} Wayman also argues his conviction must be reversed since the trial court made an incorrect factual finding. Specifically, Wayman argues the trial court erred by finding the witness who first noticed his vehicle "was so alarmed in observing the defendant's driving and idling on the road that he believed the defendant to be impaired and in need of emergency assistance." Wayman supports this argument based on the following exchange:

Q: Okay. You said you saw Mr. Wayman stopped in the middle of the roadway, and he was stopped in the middle of the roadway for a minute or two, correct?

A: Yes.

Q: Okay. Could you see what he was doing at that time?

A: No. He was just sit – sitting in the car?

Q: Okay. And he's still sitting up at this time?

A: Yes.

Q: Okay. And so you didn't see him do anything, you just saw him sitting in the car for a minute or two?

A: Yes.

Q: And that caused you concern, correct?

A: *I didn't [be]come concerned until* he rolled past me and pulled up and kind of veered off into that vacant lot.

(Emphasis added.)

{¶ 25} Because his conviction is dependent upon when he snorted the heroin/fentanyl, Wayman places great significance on this witness' testimony that he was

- 11 -

not concerned by Wayman merely idling in the street. According to Wayman, this testimony, when taken in conjunction with his own testimony that he did not snort the heroin/fentanyl until after he pulled the vehicle to the side of the road and parked, indicates he was not impaired when he was observed "operating" the vehicle.

{¶ 26} But, even when accepting Wayman's argument as true, the fact remains that the trial court found this witness was also "alarmed" by Wayman's driving. Again, as this witness testified, "I didn't [be]come concerned until he rolled past me and pulled up and kind of veered off into that vacant lot." This makes sense when considering the witness had yet to observe anything of significance that would cause him to believe Wayman was impaired until after he "rolled past," "pulled up," and "kind of veered off into that vacant lot" ultimately coming to a stop facing against traffic parked halfway on the street and halfway on the grass.

{¶ 27} Wayman believes this single incorrect factual finding requires his conviction be reversed. However, by focusing on this singular irregularity, Wayman is ignoring all of the other evidence presented at trial to support the trial court's guilt finding. Even when ignoring the fact that Wayman exhibited multiple clues indicating he was impaired, there is no dispute that Officer Wolf found Wayman "passed out" in his vehicle with an open 16 ounce can of beer in the center console cupholder. The vehicle was still running and in gear facing against traffic stopped halfway on the street and halfway on grass with its brake lights still illuminated. Wayman also exhibited a moderate odor of an alcoholic beverage on his person, bloodshot and glassy eyes, and slurred speech. Wayman further admitted to consuming three beers earlier in the day and to snorting heroin/fentanyl at some point after getting into the vehicle. The overwhelming evidence supporting Wayman's guilt indicates this minor misstep in the trial court's factual findings had little to no impact on the

trial court's decision. Wayman's claim otherwise lacks merit.

{¶ 28} Wayman next argues his conviction must be reversed since this same witness never testified that he believed Wayman was impaired when Wayman drove past him. We agree that this witness never explicitly testified that he believed Wayman was impaired. This witness, however, still found it necessary to call 9-1-1 to report the suspicious activity that he had just observed directly in front of his house; specifically, that he had just witnessed a vehicle that had been idling in the street for several minutes drive past him and come to a stop facing against traffic parked halfway on the street and halfway on the grass. These observations, taken in context with what Officer Wolf found once he arrived at the scene, supports the trial court's decision finding Wayman guilty of "operating" a vehicle while under the influence of alcohol or drugs. Wayman's claim otherwise again lacks merit.

**Conclusion**

{¶ 29} Wayman's conviction for operating a vehicle while under the influence of alcohol or drugs was supported by sufficient evidence and was not against the manifest weight of the evidence. The overwhelming evidence presented at trial, both direct and circumstantial, fully supports the trial court's finding of guilt. Therefore, finding no merit to any of the arguments raised herein, Wayman's two assignments of error lack merit and are overruled.

{¶ 30} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

- 13 -