[Cite as *State v. Keith*, 2022-Ohio-3515.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2022-03-007 |
| Appellee, | : | O P I N I O N |
| | : | 10/3/2022 |
| - vs - | : | |
| | : | |
| BILLY KEITH, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2021 TRC 09148

Mark L. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

**M. POWELL, P.J.**

{¶ 1} Appellant, Billy Keith, appeals his conviction in the Clermont County Municipal Court for driving while intoxicated in violation of R.C. 4511.19(A)(2). For the reasons discussed below, we affirm appellant's conviction.

{¶ 2} On July 19, 2021, Officer Salamon of the Loveland Police Department was dispatched to a Mobil gas station on report of a person sleeping in a black Toyota 4Runner

in the parking lot. The driver was ultimately identified as appellant, Billy Keith. Thereafter appellant was charged with driving under the influence of alcohol, refusal of a chemical test for alcohol with prior conviction, driving while under a license suspension, and driving with fictious plates. At trial, the jury heard testimony from two witnesses, Officer Salamon and Billy Keith. The parties stipulated that appellant was previously arrested for driving under the influence in 2013.

{¶ 3} Salamon testified that upon his arrival at the scene at approximately 3:22 p.m., he observed three to five firefighters attempting to engage appellant as he sat in the driver's seat. During this time, Salamon ran the vehicle's registration and found that the vehicle was registered to a Ford truck. When Salamon approached the vehicle, he observed that the vehicle's engine was running, the keys were in the ignition, and that appellant continued to touch the steering wheel and gear shift. Salamon smelled a strong odor of alcohol on appellant's breath, noticed that appellant's eyes appeared bloodshot and glassy, and observed that appellant's speech was slow and slurred. When asked if he had been drinking, appellant informed Salamon that he had consumed one beer about two hours earlier. When asked if he had operated the vehicle, appellant responded that he drove to the gas station from the Great Wolf Lodge.

{¶ 4} Salamon testified that he asked appellant if he could have someone come pick him up, and when appellant refused, Salamon asked appellant to exit the vehicle to perform a series of field-sobriety tests to ensure that appellant could safely drive. Appellant performed the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-legged stand test. Salamon noted that for each test, several cues indicated appellant was impaired. Footage of the tests were captured on another responding officer's dashboard camera and were played for the jury at trial. After determining that appellant was impaired, Salamon placed appellant under arrest and drove him to the police station. While at the

station, Salamon read the BMV Form 2255 to appellant, and at 4:44 p.m., appellant refused to take a breath test.[1]

{¶ 5} During his own testimony, appellant denied that he drank any alcohol on the day of his arrest. He stated that he drove to Cincinnati for the day to celebrate his son's fifth birthday party at the Great Wolf Lodge, an indoor waterpark. He arrived there at 12:45 p.m., and roughly an hour later, realized he did not have a swimsuit. Appellant testified that he used the Google maps application on his phone to navigate to a nearby department store to purchase a swimsuit. On his way back, his phone would not reconnect to Google maps, and he was unable to retrace his steps back to the Great Wolf Lodge on his own.

{¶ 6} In an attempt to find his way back, he stopped at two different convenience stores to ask for help, the second being the location of his arrest. He claimed that his eyes were glassy and bloodshot because he is a welder, and he was tired from working seven days in a row leading up to the day of his arrest. He also stated that his performance on the field sobriety tests was impacted by his being very hot, confused, nervous, and "discombobulated" after being woken up by a police officer in his car.[2] Appellant stated that he refused to take the breath test because he was "suspicious of how it would turn out." Appellant moved for acquittal under Crim.R. 29 after the state presented evidence and after the close of all of the evidence. The court denied the motions both times.

{¶ 7} After hearing the evidence, the jury found appellant guilty for driving under the influence in violation of R.C. 4511.19(A)(1)(a), refusal of a chemical test for alcohol with prior conviction in violation of R.C. 4511.19(A)(2), for driving while under a license

---

1. The BMV Form 2255 is the administrative license suspension report of the law enforcement officer. It provides information to the BMV for imposing an administrative license suspension, including the result of a chemical test or the refusal to take one. Appellant's form was submitted into evidence.

2. Appellant claims that the firefighters did not make any attempt to engage with him. His recollection was that Officer Salamon woke him up and was the first individual to speak to him.

suspension in violation of R.C. 4510.16(A), and for having fictitious plates on his vehicle in violation of R.C. 4549.08(A)(1). The court merged allied offenses and sentenced appellant to 320 days in jail, imposed a $1,000 fine, and a 12-year suspension of his driver's license.

{¶ 8} Appellant now appeals his conviction for driving under the influence with a prior OVI conviction and refusing to take a breath test. He raises two assignments of error for our review. Because his arguments for each assignment are related, we will address them together.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY FAILING TO GRANT HIS RULE 29 MOTION FOR ACQUITTAL.

{¶ 11} Assignment of Error No. 2:

{¶ 12} APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE.

{¶ 13} Appellant argues in his first assignment of error that the trial court should have granted his Crim.R. 29 motion because the state failed to meet its burden of production. He asserts that the evidence presented at trial was insufficient to prove that appellant refused the breath test within—what appellant asserts to be—a two-hour time limitation. Relatedly, he argues that his trial counsel rendered ineffective assistance because counsel failed to seek the exclusion of appellant's refusal when the refusal occurred outside of the two-hour window.

{¶ 14} Ohio Criminal Rule 29(A) provides that the court shall order judgment of acquittal if the evidence is insufficient to sustain a conviction. Crim.R. 29(A). The standard of review for a denial of a Crim.R. 29(A) motion for acquittal is the same as the standard of review for a sufficiency of the evidence claim. *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. Thus, a Crim.R. 29(A) motion tests the adequacy of the state's evidence, and requires a court to determine whether the state has met its

burden of production at trial. *State v. Terry*, 12th Dist. Fayette No. CA2001-07-012, 2002-Ohio-4378, ¶ 16. Therefore, the reviewing court must examine the evidence to determine whether any rational trier of fact, when viewing the evidence in a light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith*, 12th Dist. Warren Nos. CA2012-02-017 and CA 2012-02-018, 2012-Ohio-4644, ¶ 25. We are not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Terry* at ¶ 16; *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring) (writing separately to clarify the standard of review for questions involving the weight and sufficiency of evidence).

{¶ 15} Appellant was convicted of driving under the influence of alcohol with a prior OVI conviction and refusal of a breath test in violation of R.C. 4511.19(A)(2). The statute mandates that individuals who have been previously convicted of driving under the influence in the past twenty years cannot (1) operate a vehicle under the influence of alcohol, and (2) refuse to take a chemical test after being arrested and asked by law enforcement to submit to a chemical test after being advised of the consequences of refusal in accordance with section 4511.192 of the Revised Code. R.C. 4511.19(A)(2). The parties stipulated that appellant was convicted of driving under the influence in 2013. Thus, the state was only required to put forth sufficient evidence that appellant operated a vehicle while under the influence and that he refused to take a chemical test. We first address the refusal.

{¶ 16} The wording of R.C. 4511.192(A) is important to appellant's argument. Though this is not the statute appellant violated, it is incorporated into the refusal portion of the statue that appellant did violate. It provides that a person "must submit to the chemical test or tests, subsequent to the request of the arresting officer, within two hours of the time

of the alleged violation," and if the person does not submit within that two-hour time period, the "failure to submit automatically constitutes a refusal to submit to the test or tests." R.C. 4511.192(A). Appellant argues that because R.C. 4511.19(A)(2) incorporates the consequences of refusal in R.C. 4511.192, a person is only obligated to take a chemical test during the two-hour period after the alleged violation. Appellant asserts that because the state presented evidence of the time of refusal, but not the time at which the "alleged violation" occurred, the evidence at trial was insufficient to determine that he refused the breath test during that two-hour window.

{¶ 17} Appellant attempts to force an unnatural reading of the statute. R.C. 4511.19(A)(2), by its plain language, states that "no person who," within twenty years of previously being convicted of an OVI, "shall do both of the following," (1) operate a vehicle under the influence and (2) refuse to submit to the test. All the two-hour time requirement does is prevent individuals from delaying a refusal to their advantage. A separate portion of the statute allows the court to admit into evidence the results of a chemical test in a criminal prosecution for driving under the influence provided the test is conducted within three hours of the alleged violation. R.C. 4511.19(D)(1)(b). Thus, the purpose of the two-hour requirement is to deter the obstinate driver, one who engages in behavior to "delay or obstruct the chemical testing" so as to run out the three-hour clock and prevent the results of the test from being admitted into evidence. *State v. Brabant*, 12th Dist. Clermont No. CA2010-04-031, 2011-Ohio-161, ¶ 16. If a refusal must occur within the two-hour window to be valid, the accused could easily circumvent the law by the passage of time.

{¶ 18} In addition to the plain language of the statute, it is well established that the two-hour time period "is irrelevant * * * where appellant *explicitly refused* to take the breath test." (Emphasis sic). *Id.* at ¶ 15. If refusal is relevant, then it does not matter if appellant refuses before or after the statutory two-hour period. *State v. Barnhart*, 6th Dist. Huron No.

- 6 -

H-10-005, 2011-Ohio-2693, ¶ 17; *State v. Marsh*, 7th Dist. Belmont No. 04 BE 18, 2005-Ohio-4690, ¶ 46 (finding it "wholly irrelevant" when the officers asked appellant to submit to the tests). The Ohio Supreme Court has also found that "a person arrested for operating a vehicle under the influence of alcohol who refuses to submit to a chemical test, even though the test is requested more than two hours after the alleged violation, is subject to the implied consent law * * * ." *Cline v. Ohio BMV*, 61 Ohio St.3d 93, 99 (1991). It thus follows that the same two-hour time limitation plays no role when an individual unequivocally refuses.

{¶ 19} In that same vein, and applicable to appellant's ineffective assistance claim, several courts have also found that "the timing of the officer's request to submit to chemical testing [is] irrelevant to the admissibility of the refusal." *State v. Crace*, 4th Dist. Athens No. 12CA13, 2013-Ohio-3417, ¶ 9; *Marsh* at ¶ 46. Moreover, the Sixth District rejected the argument that a refusal must be suppressed because it could not be shown that the BMV Form 2255 was read to the appellant within two hours of the alleged violation. *Barnhart*, 2011-Ohio-2693 at ¶ 15. The court reasoned that "[w]hile the result of an untimely chemical test might be suppressible, the fact that the suspect refused is not." *Id.*

{¶ 20} Thus, we are not persuaded to alter our current interpretation of the statute. We are not concerned with the timing of the alleged violation or the timing of the refusal when an individual explicitly refuses to submit to a chemical test. All that is required is for the state to put forth sufficient evidence that appellant refused to take the test. The two-hour time limit, "which forms the basis of appellant's * * * argument, is not relevant to this case, where the [conviction] resulted from an explicit refusal of chemical testing." *Brabant* at ¶ 18.

{¶ 21} Here, the state put forth the trial testimony of Officer Salamon, who testified that appellant refused to take a breath test after being informed of the consequences of refusal. The state also entered into evidence appellant's BMV Form 2255 which indicated

that appellant refused to take the breath test. When appellant testified, he never disputed that he refused, but rather explained that he refused because he was "suspicious of how [the test] would turn out." We find this evidence, if believed, to be sufficient for a rational trier of fact to find that appellant refused to take the test. Further, because the two-hour time limitation is irrelevant, any motion made by trial counsel to suppress the refusal based on that limitation would have failed.

{¶ 22} We turn now to a discussion of whether appellant was "operating" his vehicle.[3] While appellant does not directly challenge the sufficiency of the evidence as it relates to this finding, he does tangentially challenge the finding based on his interpretation of R.C. 4511.19(A)(2). Because R.C. 4511.192 provides that the person must submit to a chemical test within two hours of the time of the "alleged violation," appellant argues that the "alleged violation" in this case is the "operation" of the motor vehicle. He asserts that the state failed to demonstrate at what point in time he was "operating" the vehicle. Appellant contends that he was not "operating" his vehicle, only that he was in "physical control" of it.

{¶ 23} The term "operate" means "to cause or have caused movement of a vehicle." R.C. 4511.01(HHH). The statute employs the past tense ("have caused") to indicate an action already completed. *State v. Kapitula*, 12th Dist. Clermont No. CA2020-03-010, 2020-Ohio-6664, ¶ 26. To "have caused" movement of a vehicle is a fact that can be proven by circumstantial evidence, which possesses the same value as direct evidence." *State v. Wayman*, 12th Dist. Clermont Nos. CA2018-06-045 and CA2018-06-046, 2019-Ohio-1194,

---

3. We note that the Ohio Supreme Court's recent decision in *State v. Wilson* does not affect our analysis. The court held in *Wilson* that the definition of "operate" in R.C. 4511.01 (HHH) applies by its own terms to only R.C. Chapters 4511 and 4513 and not the offenses involving "operating" a vehicle while under various types of suspensions found in R.C. Chapter 4510, or in chapters of the code where the term "operate" is not specifically defined in the statute. *State v. Wilson*, Slip Opinion No. 2022-Ohio-3202, ¶ 10, 18. Here, appellant was charged with violating R.C. 4511.19(A)(1)(a), and thus the definition of the word "operate" as defined in R.C. 4511.01(HHH), and the cases interpreting its meaning, are applicable to appellant's case.

¶ 18. Facts demonstrating that an individual is found in the driver's seat of the vehicle with the key in the ignition and with the motor running are "circumstantial evidence that the accused operated the vehicle to bring it to the place where it was found." *State v. Cochran*, 12th Dist. Montgomery No. 22240, 2008-Ohio-3612, ¶ 25.

{¶ 24} The difference between an OVI violation, which requires "operating," and a physical control violation, is that an OVI violation requires actual movement of the car; if there is no evidence that the person moved or caused the vehicle to move, the person cannot be convicted of OVI. *State v. Shultz*, 8th Dist. Cuyahoga No. 90412, 2008-Ohio-4448, ¶ 25. Thus, "[a] person who is found passed out in his vehicle on the side of the highway" may be convicted of operating a vehicle while under the influence of alcohol or drugs "because the jury could infer that the vehicle was moved to that location." *Wayman* at ¶ 19, *quoting Shultz* at ¶ 25.

{¶ 25} In this case, the state put forth evidence that appellant was found in the driver's seat of his car, with the keys in the ignition and the engine running. Officer Salamon testified that appellant told him that he drove to the Mobil gas station from the Great Wolf Lodge. Appellant supported this testimony with his own, stating that he drove from the Great Wolf Lodge to two convenience stores for assistance with directions.

{¶ 26} We find that the state put forth sufficient evidence that, if believed, would allow a reasonable juror to find appellant guilty of driving under the influence with a prior OVI conviction and a refusal to take a chemical test. The parties stipulated to appellant's prior conviction, and the state put forth sufficient evidence that appellant both operated his vehicle and refused to take a chemical test. The two-hour time limitation in R.C. 4511.192 has no bearing on a refusal when an individual, like appellant, explicitly refuses to submit to a chemical test. As such, any motion made by counsel to suppress the refusal would

have been unsuccessful.  Accordingly, appellant's first and second assignments of error are overruled.

{¶ 27}  Judgment affirmed.

PIPER and BYRNE, JJ., concur.