[Cite as *Columbus v. Cochran*, 2019-Ohio-2583.]

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellant, | : | No. 18AP-748 |
| | | (M.C. No. 2017 TRC 176927) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Scott E. Cochran, | : | |
| Defendant-Appellee. | : | |

## D E C I S I O N

### Rendered on June 27, 2019

**On brief:** *Zachary M. Klein*, City Attorney, *Bill R. Hedrick*, and *Orly Ahroni*, for appellant. **Argued:** *Orly Ahroni.*

**On brief:** *The Tyack Law Firm Co., L.P.A., Jonathan T. Tyack,* and *Holly B. Cline*, for appellee. **Argued:** *Jonathan T. Tyack.*

APPEAL from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, City of Columbus, appeals from an entry of the Franklin County Municipal Court granting the motion to suppress of defendant-appellee, Scott E. Cochran, and ordering the dismissal of the matter. For the following reasons, we reverse.

### I. Facts and Procedural History

{¶ 2} On September 20, 2017, the city issued a citation to Cochran for one count of operating a vehicle under the influence of alcohol ("OVI") in violation of Columbus City Code ("C.C.C.") 2133.01(A)(1)(a); and one count operating a vehicle with a high prohibited alcohol concentration in violation of C.C.C. 2133.01(A)(1)(h). Cochran entered a plea of not guilty. Subsequently, on December 11, 2017, Cochran filed a motion to suppress the evidence obtained from his warrantless stop and subsequent arrest.

{¶ 3}   The trial court conducted a hearing on Cochran's motion to suppress on May 14, 2018.  At the suppression hearing, the three officers who responded to the scene testified.  Additionally, all three officers wore body cameras during their interactions with Cochran, and the trial court admitted into evidence the videos from the body cameras.

{¶ 4}   Scott Wright, an officer with the Columbus Division of Police, testified that at approximately 4:38 p.m. on September 20, 2017, he responded to a dispatch at The City Dog, a dog daycare center, where someone called police reporting concern for a customer who had come to pick up his dog.  The call to officers came in as a possible "medical or OVI." (Tr. at 16.)  When they arrived at the scene, both Officer Wright and Officer Kyle Cull had pulled their cruisers behind Cochran's vehicle and blocked his vehicle in the parking space. Officer Wright explained this was a common practice upon receiving a call about a possible medical issue or OVI to block a vehicle in until it is determined the occupant is safe to drive and will not be a danger to themselves or the public.  Officers Wright and Cull then encountered Cochran "slumped over the wheel of his car in the parking lot."  (Tr. at 34.) The car's windows were cracked open, the car key was in the ignition, and a dog was seated in the front passenger seat.

{¶ 5}   Upon approaching the passenger side of the vehicle, Officer Wright began speaking to Cochran through the car window.  Cochran told Officer Wright he had just picked up his dog and was taking a nap.  Officer Wright told Cochran that the police received calls from concerned citizens worried that Cochran was not feeling well or was having a medical issue, and he asked Cochran if he would step out of his car so they could make sure he was okay.  Cochran refused to exit his vehicle.  While standing at the passenger window, Officer Wright observed Cochran sweating and his dog panting heavily.  Officer Wright described Cochran as having "a look on his face of kind of being tired and almost distraught" and seemed "not with it."  (Tr. at 15, 16.)

{¶ 6}   When medics arrived on the scene, Cochran remained in his vehicle and rolled the driver's side window down farther to speak with the medics.  After medics tested Cochran's blood sugar for possible diabetic issues and checked his blood pressure, the medics informed the officers that "there was nothing wrong with Mr. Cochran medically and they were going to leave."  (Tr. at 17.)  Officer Cull testified that he suspected Cochran

was intoxicated.  Additionally, Officer Cull testified that Cochran had glassy eyes, slow speech, and delayed reactions when speaking with the officers.

{¶ 7}  Once the medics left, Officer Cull went inside The City Dog to speak with the witness who had initially called police.  That woman told Officer Cull that Cochran laid on the ground with his dog when he came inside.  She further said Cochran fumbled with the door as he exited The City Dog, and then she saw him get into his car and lie down in the driver's seat.

{¶ 8}  Officer Wright testified that when the medics left, he moved around to the driver's side window to continue speaking to Cochran.  From that vantage point, Officer Wright said he observed that Cochran had glassy eyes and slurred speech.  Officer Wright said Cochran was generally uncooperative and kept insisting that he was not driving but just wanted to sit in his car for a couple of hours until somebody could come get him.  From the driver's side window, Officer Wright testified he could see a half-full bottle of liquor on the driver's side floor near Cochran's feet.  When Officer Wright inquired about the bottle on the floor, Cochran kicked the bottle underneath his seat.

{¶ 9}  After observing the bottle of liquor near Cochran's feet, Officer Wright asked Cochran how much he had to drink, to which Cochran responded "not that much" and that he had "one drink."  (Tr. at 22; State's Ex. No. 1A 17:02:02-23.)  Cochran also told officers he was going to the hospital that evening for a "detox treatment."  (Tr. at 22.)

{¶ 10} Ace Trask, an OVI enforcement officer with the Columbus Division of Police, testified that he arrived on the scene before the medics left.  Officer Trask said he spoke to Cochran through a partially opened driver's side window and could smell an odor of alcohol.  Officer Trask testified that Cochran appeared to be groggy, had glassy eyes, slurred speech, and provided incoherent answers to the officers' questions.  Additionally, Officer Trask described Cochran as fumbling around in his car and exhibiting paranoia.  Since the medics had ruled out the possibility that Cochran was suffering from a medical condition, Officer Trask believed that Cochran's behavior was a result of alcohol consumption.

{¶ 11} Once the officers determined that Cochran had been drinking and was "obviously impaired," they asked Cochran to exit his vehicle for his own safety and the safety of the public.  (Tr. at 53.)  When officers told Cochran they wanted to make sure he was "safe to drive," Cochran responded "I'm not safe to drive."  (State's Ex. No. 1B 16:56:40-

44.)  The officers offered to give Cochran a ride home, but he still refused to exist his vehicle. At that point, the officers decided to remove Cochran from his vehicle.

{¶ 12}  When Cochran was distracted by his dog, Officer Trask reached through the open car window, opened the door, and asked Cochran to step out of the vehicle.  Cochran again refused, so the officers pulled him out of the vehicle, put him on the ground, and then placed him under arrest.  From the time the medics left until the time the officers eventually removed Cochran from the vehicle and placed him under arrest, the officers had spent approximately 13 minutes attempting to convince Cochran to exit the vehicle voluntarily.

{¶ 13}  The officers initially placed Cochran under arrest for having physical control of a vehicle while under the influence of alcohol or drugs.  However, after Officer Cull spoke to a witness inside The City Dog who stated she observed Cochran drive the car to the dog daycare center, the city charged Cochran with OVI.  Once in police custody, Cochran's testing revealed his blood alcohol concentration to be .361, resulting in the additional charge of operating a vehicle with a high prohibited breath alcohol concentration.

{¶ 14} Following the hearing, the trial court sustained Cochran's motion to suppress.  The trial court found officers did not have probable cause to arrest Cochran for OVI and ordered the suppression of Cochran's breath alcohol test, statements to the officers, and refusal to undergo field sobriety testing.  Additionally, the trial court dismissed the charges against Cochran, journalizing its decision in an August 29, 2018 entry.  The city then requested that the trial court state its findings of fact and conclusions of law pursuant to Crim.R. 12(F).  In an October 16, 2018 entry, the trial court found no probable cause to arrest, the arresting officers lacked reasonable and articulable suspicion to detain or question Cochran, lacked justification for removing Cochran from his vehicle, and lacked justification for requesting that Cochran submit to field sobriety tests and a breath alcohol test.  The city timely appeals.

## II.  Assignments of Error

{¶ 15}  The city assigns the following errors for our review:

> [1.] The trial court erred in granting Defendant's motion to suppress evidence because the officers were exercising their community caretaking function.

[2.] The trial court erred in granting Defendant's motion to suppress evidence because the officers had a reasonable and articulable suspicion of criminal activity.

[3.] The trial court erred in granting Defendant's motion to suppress evidence because the officers had probable cause to arrest Defendant.

[4.] The trial court erred in dismissing the charges against Defendant.

[5.] The trial court erred when it failed to make its essential findings required by Crim.R. 12(F).

## III. First, Second, and Third Assignments of Error – Motion to Suppress

{¶ 16} In its first assignment of error, the city argues the trial court erred in concluding the officers were not exercising their community caretaking function. In its second assignment of error, the city argues the trial court erred in concluding the officers did not have a reasonable and articulable suspicion of criminal activity. In its third assignment of error, the city argues the trial court erred in concluding the officers did not have probable cause to arrest Cochran. These three assignments of error are interrelated, and we address them jointly. Taken together, the city's first, second, and third assignments of error assert the trial court erred in granting Cochran's motion to suppress.

{¶ 17} " 'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.) *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 18} The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Article I, Section 14 of the Ohio

Constitution, prohibits the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *State v. Mendoza*, 10th Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357 (1967), *superseded by statute on other grounds*. There is no dispute here that police arrested Cochran without a warrant. The issue here is whether Cochran's arrest falls within any of the well-established exceptions to the warrant requirement.

### A. Officers' Initial Approach to Cochran's Vehicle

{¶ 19} The city first argues the trial court erred to the extent it suppressed any evidence related to the officers' initial approach to Cochran's vehicle.

{¶ 20} In granting Cochran's motion to suppress, the trial court concluded the arresting officers had neither reasonable suspicion initially to detain Cochran nor probable cause to arrest Cochran. "This court has recognized that 'police officers are not required to possess reasonable suspicion of criminal activity when exercising community caretaking functions.' " *State v. Young*, 10th Dist. No. 14AP-721, 2015-Ohio-2006, ¶ 32, quoting *State v. Weese*, 10th Dist. No. 12AP-949, 2013-Ohio-4056, ¶ 13, citing *State v. Chapa*, 10th Dist. No. 04AP-66, 2004-Ohio-5070, ¶ 8. " '[C]ourts recognize that a community-caretaking/emergency aid exception to the Fourth Amendment warrant requirement is necessary to allow police to respond to emergency situations where life or limb is in jeopardy.' " *Weese* at ¶ 13, quoting *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, ¶ 21. "The bounds of an officer's ability to investigate, pursuant to the community caretaking function, are not limitless." *Id.* "A police officer must possess 'objectively reasonable grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury to effect a community-caretaking/emergency-aid stop.' " *Id.*, quoting *Dunn* at ¶ 26.

{¶ 21} Here, Officers Wright and Cull responded to a police dispatch of a man slumped over his vehicle's steering wheel with the keys in the ignition. That information was obtained from a concerned citizen who called police to report the situation. Under these circumstances, the officers possessed objectively reasonable grounds to believe that their initial approach of Cochran's vehicle in the parking lot of The City Dog was necessary to protect life or prevent serious injury. *See State v. Trego*, 3d Dist. No. 2-17-04, 2017-Ohio-6932, ¶ 5-7 (police officer possessed reasonable, articulable justification to exercise the

community caretaking function when stopping a vehicle after a concerned citizen called 911 to report a possibly impaired driver). Thus, we conclude the officer's initial approach to Cochran's vehicle and subsequent summoning of medical personnel was justified under the community caretaking exception to the warrant requirement.

### B. Officers' Continued Detention of Cochran After Medics Left the Scene

{¶ 22} The city next argues the trial court erred in suppressing the evidence obtained while officers continued to detain Cochran after medics determined he was not suffering from a medical issue.

{¶ 23} One of the recognized exceptions to the warrant requirement is an investigatory detention, commonly referred to as the *Terry* stop. Under *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot. *Mendoza* at ¶ 11, citing *Terry* at 21. Accordingly, "[a]n investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.' " *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, *superseded by statute on other grounds*, quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981).

{¶ 24} Reasonable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones*, 70 Ohio App.3d 554, 556-57 (2d Dist.1990), citing *Terry* at 27. Accordingly, "[a] police officer may not rely on good faith and inarticulate hunches to meet the *Terry* standard of reasonable suspicion." *Jones* at 557. An appellate court views the propriety of a police officer's investigative stop or detention in light of the totality of the surrounding circumstances. *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus.

{¶ 25} The parties agree that officers had "detained" Cochran for purposes of the Fourth Amendment after medics left the scene. Their police cruisers were parked behind his vehicle such that he could not have driven away, and the officers remained at the vehicle's side continuing to question Cochran through the window. The trial court concluded the officers lacked reasonable suspicion of criminal activity at this point. However, the evidence at the suppression hearing indicated that once medics determined

Cochran was not experiencing a medical issue, all three officers on the scene believed Cochran was under the influence of alcohol or drugs. They formed this belief based on the reports of the witnesses who called police informing them that a man was slumped over the wheel of his car, that the man had laid on the ground with his dog, fumbled with the door, and stumbled when he exited the business, as well as their personal observations that Cochran had glassy eyes, delayed reactions, slow speech, and was uncooperative. Additionally, they saw that the key was in the ignition of the vehicle. We conclude these are specific, articulable facts upon which the officers could form a reasonable suspicion that criminal activity was, or was about to be, afoot. Thus, the trial court erred in suppressing evidence obtained during the officers' continued detention of Cochran after the medics left the scene and any evidence related to the officers' asking Cochran to submit to field sobriety tests. *State v. Perkins*, 10th Dist. No. 07AP-924, 2008-Ohio-5060, ¶ 8 (officers may investigate a suspect for impaired driving if reasonable and articulable facts exist to support the officer's suspicion).

### C. Probable Cause to Arrest

{¶ 26} The city additionally argues the trial court erred in concluding officers lacked probable cause to arrest Cochran.

{¶ 27} "A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 66, citing *United States v. Watson*, 423 U.S. 411 (1976). Though the city ultimately charged Cochran with one count of OVI and one count of OVI per se, officers arrested him on the scene on suspicion of having physical control of a vehicle while under the influence of alcohol or drugs. To the extent the trial court analyzed Cochran's motion to suppress under the rubric of whether officers had probable cause to arrest for OVI, the trial court erred. As this court has noted, the officers did not need probable cause of the commission of a *specific* crime, so long as the officers had probable cause that the accused committed *a* crime. *State v. Hayward*, 10th Dist. No. 17AP-390, 2018-Ohio-1070, ¶ 29 (emphasis sic) (concluding it was immaterial that the officers did not know the offenders were possessing marijuana and instead suspected them of possessing stolen property, stating "the officers did not need probable cause that the box truck would contain evidence of a *specific* offense; rather, it was sufficient that they had probable cause that the box truck

would contain evidence of *a* criminal offense"), citing *Dixon v. Maxwell*, 177 Ohio St. 20, 21 (1964) ("[i]t is not necessary that an officer know that a specific crime has been committed in order for him to have probable cause to make an arrest. It is sufficient if he has reasonable grounds to believe from the circumstances that a felony has been committed, and that the accused has committed it"). So long as officers had probable cause that a criminal offense had been committed, their arrest of Cochran was justified.

{¶ 28} In determining whether a police officer has probable cause to arrest a suspect for having physical control of a vehicle while under the influence of alcohol or drugs, "a court considers whether, at the moment of arrest, the officer had information within the officer's knowledge, or derived from a reasonably trustworthy source, of facts and circumstances sufficient to cause a prudent person to believe" the suspect had physical control of the vehicle while under the influence of alcohol or drugs. *State v. Montelauro*, 10th Dist. No. 11AP-413, 2011-Ohio-6568, ¶ 20, citing *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), *superseded by statute on other grounds; State v. Vasquez*, 1st Dist. No. C-160784, 2017-Ohio-7255, ¶ 12 (applying probable cause standard for OVI cases to probable cause for physical control of a vehicle while under the influence of alcohol or drugs). The trial court must examine the totality of the circumstances surrounding the arrest in making this determination. *Montelauro* at ¶ 20.

{¶ 29} In addition to the factors supporting officers' reasonable suspicion to conduct an investigatory detention of Cochran—the eyewitness reports, glassy eyes, delayed reactions, slowed speech, and general uncooperativeness—Officer Wright also testified that he saw a half-full bottle of liquor on the vehicle's floor near Cochran's feet. When asked about the bottle, Cochran kicked it under the seat in an attempt to conceal it. Cochran also admitted to drinking alcohol, stated he was going to the hospital that evening for a "detox treatment," appeared groggy, fumbled around in his car, and exhibited paranoia. When asked whether he was safe to drive, Cochran admitted he was "not safe to drive." (State's Ex. No. 1B 16:56:40-44.) Cochran also refused to submit to field sobriety tests when asked. All of these factors, when considered in the totality of the circumstances, support a conclusion that the officers had probable cause to arrest Cochran. Thus, the trial court erred in suppressing evidence on the basis that officers lacked probable cause to arrest Cochran.

### D. Motion to Suppress

{¶ 30} In summation, the evidence at the suppression hearing indicated that officers acted properly within their community caretaking function when they initially approached Cochran, they had reasonable suspicion to continue to detain him to conduct an investigatory stop, and they ultimately had probable cause to arrest him in the parking lot of The City Dog. For these reasons, the trial court erred in granting Cochran's motion to suppress. Thus, we sustain the city's first, second, and third assignments of error.

## IV. Fourth Assignment of Error – Dismissal of the Charges

{¶ 31} In its fourth assignment of error, the city argues the trial court erred in dismissing the charges against Cochran after it granted Cochran's motion to suppress.

{¶ 32} As the city notes, "[g]enerally, 'the proper remedy for a Fourth Amendment violation is suppression of the evidence wrongfully obtained, not dismissal of the charges.' " *Columbus v. Galang*, 10th Dist. No. 02AP-1441, 2003-Ohio-4506, ¶ 8, quoting *Blanchester v. Hester,* 81 Ohio App.3d 815, 820 (12th Dist.1992). Having determined in our resolution of the city's first, second, and third assignments of error that the trial court erred in granting Cochran's motion to suppress, we also conclude the trial court erred in dismissing the charges against Cochran. On remand, we instruct the trial court to deny Cochran's motion to suppress and to vacate its entry dismissing the matter. We sustain the city's fourth assignment of error.

## V. Fifth Assignment of Error – Crim.R. 12 Findings

{¶ 33} In its fifth and final assignment of error, the city argues the trial court erred in failing to make the essential findings required by Crim.R. 12(F). However, having determined in our resolution of the city's first, second, and third assignments of error that the trial court erred in granting Cochran's motion to suppress, the city's fifth assignment of error is moot and we need not address it.

## VI. Disposition

{¶ 34} Based on the foregoing reasons, the trial court erred in granting Cochran's motion to suppress and in dismissing the charges against him. Having sustained the city's

first, second, third, and fourth assignments of error, which rendered moot the city's fifth assignment of error, we reverse the judgment of the Franklin County Municipal Court and remand the matter to that court for further proceedings consistent with this decision.

*Judgment reversed; cause remanded.*

BROWN and SADLER, JJ., concur.

_____