[Cite as *State v. Fuqua*, 2022-Ohio-1952.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-210385 |
| | | C-210386 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-21TRC-2624A |
| | | C-21TRC-2624B |
| vs. | : | |
| RICARDO FUQUA, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed in C-210385; Appeal Dismissed in C-210386

Date of Judgment Entry on Appeal: June 10, 2022

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1} Following a jury trial, defendant-appellant Ricardo Fuqua was found guilty of operating a vehicle while under the influence ("OVI"), and of being in physical control of a vehicle while under the influence. The trial court merged the offenses and sentenced Fuqua for the OVI offense. Because Fuqua was therefore not convicted of the physical-control offense, we dismiss the appeal relating to that offense in the case numbered C-210386. And, finding no merit to Fuqua's challenges to his OVI conviction and the denial of his motion to suppress, we affirm the trial court's judgment in the case numbered C-210385.

### The Suppression Hearing

{¶2} Prior to trial, Fuqua filed a motion to suppress the evidence of driving under the influence of alcohol that had been obtained by the arresting officer, arguing that the officer did not have probable cause to arrest him. At the suppression hearing, the state presented evidence that at 12:30 a.m., during a heavy January snowstorm, police received a report about Fuqua from a township salt truck driver who was clearing the snow-covered roads. An officer found Fuqua "passed out, sleeping" in the driver's seat of his running car, which was parked on the roadway at a stop sign. The officer said Fuqua's car was stopped at a "T" intersection in a residential neighborhood. Fuqua did not wake up when the officer knocked on his window, or when the officer opened the door and spoke to him. The officer had to physically shake Fuqua to wake him.

{¶3} The officer noticed that Fuqua had red, heavy eyes, and "a moderate odor of an alcoholic beverage that I could smell over a scent of cologne[.]" Fuqua was tired, disoriented, confused, and repeatedly tried to reach for something near the floor on the passenger side, but, the officer said, there was nothing to reach for in that area.

Fuqua had slurred speech and admitted to consuming four drinks that night. He said that he was on his way home from a friend's house. When Fuqua got out of his car, he was "very off balance," and was "off balance either way he walked." When Fuqua started to sway backward at one point, the officer put his hand on Fuqua's back to keep him from falling.

{¶4} When the officer asked Fuqua to perform field-sobriety tests, Fuqua indicated that he would. The officer testified that due to the inclement weather, it would not have been fair for Fuqua to perform the tests at the scene. He handcuffed Fuqua and put him in his cruiser to transport him to the police station so that Fuqua could perform the tests "in a drier condition to give him * * * a fair opportunity to properly perform them[.]" When they got to the station, Fuqua refused the tests.

{¶5} The officer's opinion was that Fuqua was under the influence of alcohol and that his ability to operate a motor vehicle was noticeably impaired as a result. The officer cited Fuqua for OVI, in violation of R.C. 4511.19(A)(1)(a), and for having physical control of a vehicle while under the influence, in violation of R.C. 4511.194.

{¶6} Following the hearing, the trial court determined that under the totality of the circumstances, the officer had probable cause to arrest Fuqua, and denied the motion to suppress.

### *The Jury Trial*

{¶7} The case later proceeded to a jury trial and Fuqua was found guilty of both offenses. The arresting officer testified that the salt truck driver reported that he could not get around Fuqua's car and that someone was passed out behind the wheel of the car. On his way to the scene, the officer had to drive under the speed limit in the hazardous conditions, so he knew that Fuqua's car had "been there for some time."

{¶8}   The officer clarified that Fuqua's car was not parked on the side of the road, but in the road at the stop sign, such that it "took up the entire right lane." He said, "The whole car was in the roadway." When asked if Fuqua was legally parked, the officer replied, "No. Obstructing the traffic way. That's why the original call * * * [the salt] truck driver couldn't plow the street or part of the street" because of where Fuqua's car was parked. The officer said that as he was arriving on the scene, another car had had to drive around Fuqua's car, too.

{¶9}   The officer said that Fuqua was "slightly slouched over to his right, appeared to be passed out." Fuqua was "[n]ot in a forward position, but leaning backwards." The officer said that, after knocking on the window several times, he opened the door and yelled, "Sir" to Fuqua multiple times and told him to wake up, but got no response. The officer said that he shook Fuqua by the arm to get his attention, and that Fuqua woke up "[a]fter a few shakes." Fuqua had red, "glossy" eyes, and appeared "very disoriented, confused." The officer described how Fuqua "began reaching into his passenger floorboard, but there was nothing there."

{¶10}  The officer said that when he identified himself, Fuqua slurred, "I'm okay. I'm okay." The officer asked Fuqua to step out of the car, but it seemed that Fuqua did not comprehend what was being asked of him, even though he had been awake for "about a minute." The officer had to ask Fuqua more than once to get out of the car. When Fuqua got out of the car, he swayed so much that the officer had to put his hand on his back and had to hold him up.

{¶11}  According to the officer, he asked Fuqua if he "had anything to drink tonight," and Fuqua "stated that he did." The officer acknowledged that when Fuqua replied that he had had four drinks, the officer did not ask Fuqua whether those drinks had been beer, liquor, or wine, or whether his drinking had been within the hour or

the last few hours. Fuqua said "something about hanging out with a female friend and he was on his way home."

{¶12} At the police station, the officer had to help Fuqua out of the cruiser. The officer described Fuqua's behavior as alternating between being calm and crying. Fuqua "[m]entioned something about ruining his life, a job." Fuqua was offered the chance to perform field-sobriety tests and to take a breath test, and was informed of the consequences for refusing the breath test, which included a suspension of his driver's license. Fuqua refused the tests.

{¶13} In the officer's opinion, Fuqua's ability to operate a motor vehicle was appreciably impaired as a result of being under the influence. The officer based his opinion as to Fuqua's impairment on his being passed out behind the wheel, "his speech, his eyes, his balance, smell[,] his ability to basically respond back to questions. His emotional state. Like I mentioned, the rollercoaster ride, if you will."

{¶14} At the conclusion of the trial, the jury found Fuqua guilty of both OVI and the physical-control offense. The trial court merged the offenses and sentenced Fuqua on the OVI offense.

### Probable Cause to Arrest

{¶15} In his first assignment of error, Fuqua argues that the trial court erred in denying his motion to suppress because his arrest was not supported by probable cause. He argues that the officer lacked probable cause to arrest him for the OVI offense because there was insufficient evidence to demonstrate that he operated the vehicle. In addition, he argues that the officer lacked probable cause to arrest him for either the OVI or the physical-control offense due to "[t]he absence of probable cause on the element of intoxication." In other words, with respect to whether there was probable cause to arrest for the physical-control violation, he does not challenge that

he was in physical control of the vehicle, but only that he was under the influence of alcohol at the time.

{¶16} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's factual findings if they are supported by competent, credible evidence, but we review de novo the trial court's application of the law to those facts. *Id.*

{¶17} An officer has probable cause to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing any offense for which he could be arrested without a warrant. *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.E.2d 343 (1979); *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, syllabus. Probable cause exists when the "facts and circumstances within the officer's knowledge * * * are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *DeFillippo* at 37.

{¶18} The constitutionality of Fuqua's arrest depended upon "whether it was supported by probable cause that [he] was committing any offense for which he could be arrested without a warrant." *State v. Vasquez*, 1st Dist. Hamilton Nos. C-160784, C-160785, C-160786 and C-160787, 2017-Ohio-7255, ¶ 11, citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), and *Brown* at syllabus. The officer "did not need probable cause of the commission of a *specific* crime, so long as the officer[] had probable cause that the accused committed *a* crime." (Emphasis sic.) *Columbus v. Cochran*, 10th Dist. Franklin No. 18AP-748, 2019-Ohio-2583, ¶ 27; *Dixon v. Maxwell*, 177 Ohio St. 20, 21, 201 N.E.2d 592 (1964) ("It is not necessary that an officer

know that a specific crime has been committed in order for him to have probable cause to make an arrest. It is sufficient if he has reasonable grounds to believe from the circumstances that a [crime] has been committed, and that the accused has committed it.").

{¶19} Fuqua argues that, without field-sobriety testing, evidence of erratic driving, or the presence of alcohol in the vehicle, there was insufficient factual support to demonstrate probable cause that he was under the influence of alcohol while he operated or was in physical control of a vehicle.

{¶20} Even without field-sobriety tests, the totality of the facts and circumstances can support a finding of probable cause that a person was under the influence. *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statute on other grounds as recognized in State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155; *Cincinnati v. Jacobs*, 1st Dist. Hamilton Nos. C-010279, C-010280 and C-010281, 2001 Ohio App. LEXIS 5546 (Dec. 14, 2001); *State v. Whitty*, 1st Dist. Hamilton Nos. C-100101 and C-100102, 2010-Ohio-5847; *Cincinnati v. Bryant*, 1st Dist. Hamilton No. C-090546, 2010-Ohio-4474; *State v. Sanders*, 1st Dist. Hamilton Nos. C-130193 and C-130194, 2014-Ohio-511.

{¶21} Evidence of a minor traffic infraction, the odor of alcohol, and "some reasonable indicia" of impairment is sufficient to establish probable cause. *Bryant* at ¶ 25. For example, in *State v. Kiefer,* 1st Dist. Hamilton No. C-030205, 2004-Ohio-5054, we held that police officers had probable cause to arrest for OVI where the defendant driver was sleeping in his running car stopped on an exit ramp, had to be woken by knocking on his car window, and had watery, glassy, and bloodshot eyes, smelled of alcohol, had slurred speech and a poor attention span, admitted to consuming six beers, and staggered when he walked.

{¶22} Here, the officer found Fuqua asleep at the wheel of his running car, which was illegally parked on a roadway at a stop sign. Fuqua failed to wake despite the officer's knocking on the window and talking to him, and did not wake until he was physically shaken. Fuqua had red, heavy eyes, and a moderate odor of alcohol about him. He was tired, disoriented, confused, and fumbled around near the floor of the passenger side, for no reason. He had slurred speech, admitted to consuming four drinks that night, and was off balance upon walking to the point where the officer had to steady him to keep him from falling. These facts, when considered as a whole, would cause an "objectively reasonable police officer" to believe that an OVI or a physical-control offense had occurred.

{¶23} Fuqua also argues that the officer did not personally observe him driving and that there were no eyewitness accounts to support that fact. However, because the officer had probable cause to arrest Fuqua for the physical-control offense, the state did not have to demonstrate probable cause to arrest for an "operational" offense. *See Vasquez*, 1st Dist. Hamilton Nos. C-160784, C-160785, C-160786 and C-160787, 2017-Ohio-7255, at ¶ 10-12. Therefore, probable cause could be established "by evidence that the police had sufficient knowledge at the time, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that [Fuqua] was in physical control of a vehicle while under the influence of alcohol." *Id.* at ¶ 12; *Cochran*, 10th Dist. Franklin No. 18AP-748, 2019-Ohio-2583, at ¶ 28. The probable-cause "standard was not affected by the fact that the police would have to prove operation to obtain a conviction for the OVI [violation]." *Id.*; *see also Cochran* at ¶ 27-29 (trial court erred by requiring city to prove probable cause to arrest for OVI where city proved probable cause to arrest for physical-control violation).

**{¶24}** Because Fuqua's arrest was supported by probable cause that he was under the influence while in physical control of a vehicle, the trial court properly denied his motion to suppress. We overrule the first assignment of error.

### Weight and Sufficiency of the Evidence at Trial

**{¶25}** In his second assignment of error, Fuqua challenges the weight and sufficiency of the evidence supporting his OVI conviction. In reviewing a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In reviewing the sufficiency of the evidence, we must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶26}** To find Fuqua guilty of OVI in violation of R.C. 4511.19(A)(1)(a),[1] the jury was required to find that he operated a vehicle and, at the time of operation, he was under the influence of alcohol. The term "operate" is defined as "to cause or have caused movement of a vehicle[.]" R.C. 4511.01(HHH). The definition includes both the present tense and the past tense "in relation to the movement of a vehicle. The past tense indicates an action already completed." *State v. Anderson*, 1st Dist. Hamilton No. C-160920, 2017-Ohio-8641, ¶ 16. Operation may be proved by

---

[1] R.C. 4511.19(A)(1)(a) provides: "No person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

9

circumstantial evidence. *Id.*; *State v. Panzeca*, 1st Dist. Hamilton Nos. C-190474 and C-190475, 2020-Ohio-4448, ¶ 13.

{¶27} Fuqua argues that the state failed to prove the element of operation because the officer's testimony established only that the car was parked in a residential neighborhood by a stop sign and that the engine was running. He asserts that the state presented no evidence to support that he moved or caused the car to move. He does not challenge the sufficiency of the evidence supporting the "under the influence" element—instead, he argues that based upon the insufficient evidence of movement, the evidence supported only a physical-control violation.

{¶28} Fuqua points to this court's decision in *State v. Anderson*, where we found insufficient evidence of operation where the defendant was found unconscious in the driver's seat of a vehicle with the keys in the ignition and no one testified that they had seen the defendant driving. *Anderson* at ¶ 2, 31. However, important to our decision in *Anderson* were the facts that there was no evidence that the vehicle was running or "that the vehicle had been parked, wrecked, or disabled in the street, parked along the side of the street, or parked in the parking lot in an awkward manner." *Id.* at ¶ 31. Unlike *Anderson*, however, Fuqua was found asleep in the driver's seat of his car, which was illegally parked at a stop sign, taking up a lane of travel, with the car running and its lights on, and Fuqua admitted that he had been on his way home from a friend's house.

{¶29} In OVI cases involving defendants who were passed out or sleeping in the driver's seats of their vehicles, courts have found sufficient evidence of operation where the vehicles were running and the vehicles were either in the roadway or halfway on the roadway and halfway on a lawn. *State v. Wayman*, 12th Dist. Clermont Nos. CA2018-06-045 and CA2018-06-046, 2019-Ohio-1194, ¶ 20-21 (defendant was

passed out in the driver's seat of a vehicle that was still running and in gear parked facing against traffic, stopped halfway on the pavement and halfway on the lawn); *Cleveland v. Sheppard*, 8th Dist. Cuyahoga No. 103166, 2016-Ohio-7393, ¶ 3, 31 (defendant was sleeping behind the steering wheel of a running vehicle, its headlights on, which was parked partially on the lawn and partially on the street); *State v. Jamison*, 9th Dist. Summit No. 27644, 2016-Ohio-5122, ¶ 34 (defendant sleeping in the driver's seat of a running vehicle that was in gear and in the left turn lane, with its turn signal activated); *State v. Adams*, 3d Dist. Crawford No. 3-06-24, 2007-Ohio-4932, ¶ 22 (defendant was slumped over the steering wheel of a running vehicle parked in the middle of a lane at a stop sign at an exit ramp).

{¶30} In this case, where Fuqua was found alone and asleep in the driver's seat of his car, illegally parked at a stop sign, taking up a lane of travel, with the car running and its lights on, and Fuqua said that he had been on his way home from a friend's house, the trier of fact could reasonably infer that he had moved the vehicle to that location. There is no other reasonable explanation for how the car got there. Consequently, we hold that the state presented sufficient circumstantial evidence to prove that Fuqua operated a vehicle for purposes of a violation of R.C. 4511.19(A)(1)(a).

{¶31} Ultimately, it was for the jury to decide credibility and weigh the evidence. This is not "the exceptional case in which the evidence weighs heavily against the conviction." *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Therefore, we hold that Fuqua's OVI conviction was not against the manifest weight of the evidence. We overrule the second assignment of error.

### Conclusion

**{¶32}** Having overruled both assignments of error, we affirm the trial court's judgment in the case numbered C-210385. We dismiss the appeal in the case numbered C-210386.

Judgment accordingly.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.