[Cite as *State v. S.B.*, 2024-Ohio-2080.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 23AP-195 |
| v. | : | (C.P.C. No. 23CR-0160) |
| [S.B.], | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 30, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Paula M. Sawyers* for appellee. **Argued:** *Paula M. Sawyers*.

**On brief:** *Timothy Young*, Public Defender, and *Charlyn E. Bohland* for appellant. **Argued:** *Charlyn E. Bohland*.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, P.J.

{¶ 1} Plaintiff-appellant, S.B., appeals from a February 24, 2023 judgment entry sentencing S.B. to 15 years to life in prison for murder. For the reasons that follow, we reverse.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On March 4, 2022, a complaint was filed in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, alleging S.B. was a delinquent based on the allegation that, on or about January 2, 2022, he committed murder in violation of R.C. 2903.02(A), an unclassified felony (Count One), and murder in violation of R.C. 2903.02(B), an unclassified felony (Count Two). The charges stem from the death of S.M., a staff member at New Life Group Home where S.B. had resided. On March 4, 2022, pursuant to R.C. 2152.12 and Juv.R. 30, the state filed a motion to relinquish jurisdiction and transfer the case to the Franklin County Court of Common Pleas for adult

prosecution. Pursuant to Juv.R. 4(A), the juvenile court appointed counsel to represent S.B. as he was without funds to retain counsel. (Mar. 10, 2022 Entry.)

{¶ 3} On March 8, 2022, the juvenile court held a status conference in this matter. While S.B. appeared via Zoom, the state noted that his mother was not able to attend as she was an amputee and had mobility limitations. (Mar. 8, 2022 Tr. at 6.) The juvenile court found that based on S.B.'s age and that the state had "some contact with mom at this point" a guardian ad litem ("GAL") was not required. (Mar. 8, 2022 Tr. at 7.)

{¶ 4} On April 11, 2022, counsel for S.B. filed a motion to appoint an independent forensic psychologist at the court's expense to determine S.B.'s competency. On April 19, 2022, the trial court granted the motion and appointed Netcare to complete the evaluation. On June 14, 2022, the trial court continued a scheduled hearing to provide additional time for the evaluators to complete the competency report. On June 23, 2022, Netcare issued its evaluation finding S.B. competent to stand trial.

{¶ 5} A hearing in this matter was held on July 12, 2022. During the hearing, while counsel for S.B. acknowledged the competency report's conclusion, he disagreed with its findings and requested a second evaluation. The trial court made the following remarks on the record:

> [Trial Court]: All Right. I -- I typically do not grant a second one. He certainly has the right to obtain a second one if he wishes to do so, but I typically do not do that at Court's expense.
>
> * * *
>
> [Trial Court]: All right. So, I'm going to tell you that your request for a second is granted, whether or not it's at Court expense, if you want to brief that and talk to the family about that, I wish -- I request that you do that in the next 14 days.

(July 12, 2022 Tr. at 3-4.)

{¶ 6} On July 25, 2022, counsel for S.B. filed a motion to appoint an independent forensic psychologist at the court's expense. In the motion, counsel noted S.B.'s indigence, that he was not 18 years old at the time of the alleged offense, his family could not pay for a second evaluation, and he had been incarcerated for over seven months. Counsel described his interactions with S.B. as follows:

> After speaking with [S.B.] on multiple occasions, [he] has reached the conclusion that [S.B.] does not seem to understand the gravity or nature of his situation, as it has become clear that [S.B.] is not rational in his thinking. [S.B.] has been diagnosed with schizophrenia and Bi-Polar as well as other various mental health illnesses. [S.B.] stated that he is experiencing hallucinations. Additionally, [S.B.] stated that he has been hospitalized for mental health on several occasions over the last year.

(July 25, 2022 Mot. to Appoint an Independent Forensic Psychologist at Ct. Expense at 2.)

{¶ 7} On July 27, 2022, the juvenile court denied the motion writing that it had already allowed one evaluation at the court's expense. Also on July 27, 2022, the juvenile court permitted S.B.'s counsel to withdraw from the case. Substitute counsel was appointed on August 3, 2022.[1]

{¶ 8} On August 9, 2022, a motion was filed to move S.B. from the Franklin County Juvenile Intervention Center to the Franklin County jail. On August 10, 2022, the juvenile court held a hearing to address the motion to transfer S.B. to the Franklin County jail pending adjudication and disposition of the case. During the hearing, S.B.'s counsel stated that her client would stipulate to the move. When the juvenile court asked S.B. about the stipulation he stated, "I'm not gonna lie, I don't understand. I didn't understand what you just said." (Aug. 10, 2023 Tr. at 3-4.) The juvenile court then directed counsel to speak with her client. Counsel remarked, "and just for the record, Your Honor, * * * there are still discussions regarding his competency. So I will do my best to explain that to him." (Aug. 10, 2022 Tr. at 4.) Upon discussions with counsel, S.B. ultimately agreed to the transfer to the adult county jail. (Aug. 10, 2023 Tr. at 5, 8.)

{¶ 9} A competency hearing was held in this case on October 18, 2022. At the hearing, counsel for S.B. stipulated to the competency report stating:

> At this time, we would stipulate to the competency report that was filed prior to my or that was completed prior to my involvement on the case. I do know that prior counsel requested an opportunity to have a second evaluation at the ex -- expense of the State of Ohio and I believe the Court denied that. I had been trying to see if I could get a private evaluator to evaluate Mr. [S.B.] using mother's insurance, but that did not work out. So I think we're at a point where [S.B.] understands that we, you know, don't have the resources

---

[1] The July 27, 2022 entry notes that counsel for S.B. was appointed Judge of the Hocking County Common Pleas Court.

independently to get another evaluation. So as a result, Your Honor, we will stipulate to the report.

(Oct. 18, 2022 Tr. at 3-4.)

{¶ 10} At the conclusion of the hearing, the trial court accepted the stipulation, and the competency evaluation was admitted into evidence. The juvenile court determined S.B. was competent for the purposes of proceeding with respect to the charges that were pending against him. In late October 2022, S.B.'s mother passed away.

{¶ 11} On November 29, 2022, the juvenile court held a hearing to address the bindover motion. During the hearing, the state informed the court that the motion would be uncontested as S.B. would stipulate to probable cause. "There is an agreement as to adult court procedures as well with a Bill of Information being entered in that case." (Nov. 29, 2022 Tr. at 3.) Counsel for S.B. represented that she had spoken to her client regarding the stipulation, explained what it meant, and that they were also stipulating to his age at the time of the offense. (Nov. 29, 2022 Tr. at 4.) When the juvenile court inquired as to whether anyone was forcing him to enter the stipulation, S.B. engaged in the following exchange with the court:

> [Juvenile Court]: Okay. Is anyone forcing you to make this decision today?
>
> [S.B.]: Ah, yeah.
>
> [Juvenile Court]: Who is forcing you to make this decision?
>
> [S.B.]: My lawyer. She wants me to just go to adult court.
>
> [Juvenile Court]: Okay. Is she forcing you to do that or is she talking to you about your rights to -- and -- and how to move forward?
>
> [S.B.]: I -- I don't know. I don't know.
>
> [Juvenile Court]: Okay. Okay. I think we -- we need to set this for a hearing, folks.

(Nov. 29, 2022 Tr. at 10-11.)

{¶ 12} The juvenile court then continued the hearing and appointed a GAL to protect S.B.'s interests in the case. (Nov. 29, 2022 Tr. at 13.)

{¶ 13} On January 3, 2023, the juvenile court held a probable cause hearing in this matter. During the hearing, the counsel for S.B. informed the juvenile court that her client would stipulate that he was 17 years old at the time of the offense, that the victim died on February 4, 2022 from injuries sustained on January 2, 2022, that service of the March 4,

2022 motion for probable cause was obtained, and that he would not be amendable to rehabilitation in the juvenile system. (Jan. 3, 2023 Tr. at 5.) The GAL stated that it would be in S.B.'s best interest to "get the process moving so that he can get some redeeming qualities of life thereafter." (Jan. 3, 2023 Tr. at 6.)

{¶ 14} Upon questioning by the juvenile court, S.B. did not understand why he was charged with two counts of murder. The court went off the record to allow S.B. to discuss the matter with his counsel. (Jan. 3, 2023 Tr. at 8-9.) After discussions with his attorney, S.B. indicated that he understood why he was charged with multiple counts of murder in the complaint. After additional discussions with S.B., the juvenile court asked the GAL if "[he] believe[d] that [S.B.] understands the consequences of this stipulation and the waiver of his rights?" (Jan. 3, 2023 Tr. at 15.) The GAL stated that he believed S.B. understood. The juvenile court found S.B. was "knowingly and voluntarily waiving his right to a hear[ing] -- a probable cause and in the circumstances if it was found to be discretionary an amenability hearing and he's doing that with full understanding of the consequences which is a transfer to adult court for prosecution." (Jan. 3, 2023 Tr. at 15.) The juvenile court then transferred this matter to the Franklin County Court of Common Pleas for criminal prosecution. (Jan. 6, 2023 Entry.)

{¶ 15} On January 25, 2023, S.B. was indicted for murder in violation of R.C. 2903.02, an unclassified felony. On February 22, 2023, S.B. entered a plea of guilty to murder. The parties waived a presentence investigation and the matter proceeded to sentencing. The trial court sentenced S.B. to 15 years to life in prison with 416 days of jail-time credit. (Feb. 22, 2023 Tr. at 16, 29); (Feb. 24, 2023 Jgmt. Entry.)

{¶ 16} S.B. filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 17} S.B. assigns the following as trial court error:

> [I.] The juvenile court erred when it denied [S.B.'s] request for a second evaluation at state's expense, in violation of R.C. 2152.57(E)(2), the Fifth and Fourteenth Amendments to the U.S. Constitution; and, Article I, Sections 2 and 16, Ohio Constitution.

> [II.] [S.B.] was denied the effective assistance of counsel when his attorney stipulated to the contents of a competency assessment report that failed to meet the statutory

requirements and when there were ongoing concerns about competence, as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution; and, Article I, Section 10, Ohio Constitution.

[III.] The juvenile court's failure to view [S.B.] as a child violated his right to have a GAL appointed to protect his best interests, as guaranteed by R.C. 2152.02(C)(1), Juv. 4(B), and R.C. 2151.281(A)(1).

[IV.] The juvenile court erred when it transferred [S.B.'s] case to adult court when [S.B.'s] stipulation to probable cause and waiver of the hearing was not knowingly, intelligently, and voluntarily given, in violation of *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, the Fourteenth Amendment to the U.S. Constitution; and, Article I, Section 16, Ohio Constitution.

## III.  LEGAL ANALYSIS

### A. Appellant's First Assignments of Error

{¶ 18} We begin by addressing whether the trial court erred when it denied S.B.'s motion for a second evaluation at the state's expense in violation of R.C. 2152.57(E).

{¶ 19} Generally, a question of statutory interpretation is reviewed de novo. *State v. Wilson*, 170 Ohio St.3d 12, 2022-Ohio-3202, ¶ 5, citing *State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, ¶ 20.  However, as counsel failed to object at any point after the juvenile court denied the second evaluation at the county's expense, S.B. has waived all but plain error. *State v. Ferguson*, 108 Ohio St.3d 451, 2006-Ohio-1502, ¶ 51.

{¶ 20} To succeed under plain error review, S.B. must demonstrate that " '[1] an error occurred, [2] that the error was obvious, and [3] that there is "a reasonable *probability* that the error resulted in prejudice," meaning that the error affected the outcome of the trial.' " (Emphasis added in *Rogers*.)  *State v. Bailey*, 171 Ohio St.3d 486, 2022-Ohio-4407, ¶ 8, quoting *State v. McAlpin*, ___ Ohio St.3d ___, 2022-Ohio-1567, ¶ 66, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22.  The three elements of plain error analysis are read in the conjunctive requiring that all three elements must be met to support a reviewing court's intervention.  *Bailey* at ¶ 9, citing *State v. Barnes*, 94 Ohio St.3d 21, 2002-Ohio-68 ("By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at

trial"). Under plain error, a defendant generally must demonstrate there is a "reasonable probability that, but for [the error claimed], the [outcome] of the proceeding would have been different." (Internal citations omitted.) *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82 (2004).

{¶ 21} R.C. 2152.57(E) concerns the juvenile court's procedure once a competency report has been submitted. R.C. 2152.57(E)(1) provides that either party may object to the contents of the competency report and seek an additional evaluation. When a party objects to the contents of a competency assessment, the trial court is tasked with resolving whether an additional evaluation is warranted. *Id*. However, once the trial court concludes that an additional evaluation is appropriate, the county is required to cover the costs of an indigent child's subsequent evaluation.

{¶ 22} R.C. 2152.57(E)(2) directs:

> An additional evaluation allowed under division (E)(1) of this section shall be made at the moving party's expense unless the child is indigent. **If the child is indigent, the county shall pay the costs of the additional evaluation.** However, the county shall not be required to pay costs exceeding that which the county would normally pay for a competency evaluation conducted by a provider with which the court or county has contracted to conduct competency evaluations.

(Emphasis added.)

{¶ 23} In the instant case, S.B.'s counsel moved for an additional evaluation at the July 12, 2022 hearing. Upon discussions with the parties, the trial court granted S.B.'s motion for a second evaluation. ("[Trial Court]: All right. So, I'm going to tell you that your request for a second is granted.") (July 12, 2022 Tr. at 4.) The trial court then turned to the second question of who should pay for the second competency assessment. At the hearing, the juvenile court declined to address whether the county would pay for the report at that time stating, "whether or not it's at Court expense, if you want to brief that and talk to the family about that. If you wish to brief that * * * I request that you do that in the next 14 days." (July 12, 2022 Tr. at 4.)

{¶ 24} Here, it is apparent that the court granted S.B.'s motion for an additional evaluation, and the scope of the subsequent motion concerned whether the evaluation would be at the county's expense. However, the juvenile court's ultimate denial of the

second evaluation at the county's expense conflicts with the plain language of R.C. 2152.57(E)(2) as the county was required to cover the costs of the additional evaluation. Therefore, the trial court committed an obvious error by denying S.B.'s request for a second evaluation at the county's expense.

{¶ 25} The state contends that the juvenile court reconsidered its prior ruling when it denied S.B.'s motion for an additional evaluation at the county's expense. (Appellee's Brief at 22-24.) However, there is no evidence in the record to support this conclusion. The juvenile court's July 27, 2022 entry amounted to a single sentence, edited by hand, denying the motion as "[S.B.] has had an independent competency evaluation at court expense." (July 27, 2022 Entry.) There is nothing in the entry that could be reasonably construed to mean the juvenile court had reconsidered its prior ruling or that a second evaluation was no longer warranted. While it is true that "it is a mainstay of Ohio jurisprudence that a court speaks only through its entries"—*State v. Gifford*, 10th Dist. No. 21AP-136, 2021-Ohio-3806, ¶ 14—the entry is not in conflict with the prior ruling as the motion was limited to whether the county should pay for the second competency evaluation.

{¶ 26} Our conclusion is bolstered by counsel's statements during the subsequent hearings. On August 10, 2022, the parties appeared before the juvenile court regarding the motion to move S.B. to adult jail pending adjudication and disposition in this matter. While counsel initially represented that S.B. would stipulate to the move, S.B. stated, "I'm not gonna lie, I don't understand. I didn't understand what you just said." (Aug. 10, 2023 Tr. at 3-4.) The juvenile court then directed counsel to speak with her client. Counsel remarked, "and just for the record, Your Honor, there is -- there are still discussions regarding his competency." (Aug. 10, 2023 Tr. at 3-4.) At the October 18, 2022 hearing, counsel again restated her efforts to obtain a second evaluation before ultimately stipulating to the competency report. "I had been trying to see if I could get a private evaluator to evaluate [S.B.] using mother's insurance, but that did not work out. So I think we're at a point where [S.B.] understands that we, you know, don't have the resources independently to get another evaluation. So as a result, * * * we will stipulate to the report." (Oct. 18, 2022 Tr. at 3-4.) At both hearings, counsel was operating under the belief that the trial court would permit a second evaluation if S.B. could procure the requisite funds. At no point during either proceeding did the juvenile court dispute the counsel's efforts to seek

a second evaluation. If the juvenile court had reconsidered its prior ruling, it surely would have corrected the record on this point.

{¶ 27} Finally, we must consider whether there was a reasonable probability that the error affected the outcome of the proceedings. While there is some dispute among the parties as to which proceeding is at issue, the result remains the same. As to the outcome of the motion for a second competency hearing, had the juvenile court understood that the county was statutorily required to pay for the additional evaluation, the motion would have been granted and the second evaluation would have been completed. Furthermore, there is a reasonable probability the outcome of the various proceedings were affected by the trial court's failure to permit a second evaluation at the county's expense. Consequently, we have serious concerns, based on information provided in the first report, whether S.B. had the capacity to stipulate to competency, stipulate to probable cause, and, ultimately, plead guilty to murder.

{¶ 28} First, there are a number of troubling details as to how the evaluation was administered. Relevant to the issues in this appeal, the report notes that the assessment was conducted by video conference while S.B. was in the detention center. (Report at 5.) During the assessment, the evaluators noted that staff members and other juveniles were moving through the area during the evaluation. (Report at 5-6.) Based on either the public nature of the assessment or S.B.'s own cognitive difficulties, the report repeatedly indicated that S.B. was "distracted" during the interview. (Report at 5.) Worse yet, the evaluators acknowledged that S.B.'s privacy was compromised during the evaluation writing:

> To provide context of this examination, the youth was in an open room with others around, including staff members who often walked in and out of the room. We also observed staff members walking behind him in the background, indicating that the youth's privacy was compromised given the required setting of the videoconference interviews at the JIC.

 (Report at 6.)

{¶ 29} Furthermore, S.B.'s extensive medical and psychological diagnoses could potentially support a finding of incompetency. In the report, S.B.'s mother stated that her son's behavioral problems started in the second grade. (Report at 3.) According to the mother, S.B. was diagnosed with attention-deficient/hyperactivity disorder and demonstrated behavior issues that resulted in multiple suspensions and an expulsion from

school.  (Report at 3-4.)  The mother also stated that the psychotic symptoms started in 2020 when he was diagnosed with schizophrenia and bipolar disorder requiring a period of inpatient care.  (Report at 4.)  According to S.B., he believed people could read his thoughts and endorsed auditory hallucinations.

> [S.B.] reported feeling "paranoid because I think the JDOs (i.e. juvenile detention officers) want to kill me." When asked why he thought staff wanted to kill him, he stated they "act mean" and "tried breaking my wrist" during an incident when he was placed in restraints. * * * He also endorsed auditory hallucinations (i.e., the perception of hearing something that others do not), specifically at night when no one is awake. He said he hears "voices," and described the "voices" as making negative comments to him and telling him to harm himself.

 (Report at 5.)

{¶ 30} While S.B. has been prescribed various psychiatric medications starting in 2020 to the time of the report, his compliance with the psychiatric medications has been variable. (Report at 4.)  The report also described S.B.'s history of substance abuse, which includes alcohol, marijuana, methamphetamine, prescription opioids, morphine, Klonopin, and Xanax.  (Report at 4, 12.)  According to the report, S.B. has had multiple episodes of self-harm and has previously attempted suicide.  (Report at 11.)  S.B. was reported to be on suicide watch at the detention center.  (Report at 6.)  Despite these findings, the evaluators provided no opinion as to whether S.B. has a mental illness stating that they believed he was able to understand the nature and objectives of the proceedings against him and is able to assist in his defense.  (Report at 11.)

{¶ 31} Regarding S.B.'s intellectual capacity, the report indicated that he completed a psychological evaluation that screened to measure intellectual functioning, which placed him in the "below average range."  (Report at 5.)  While S.B. initially indicated that he knew he was charged with murder, he could not remember the charge later in the interview.  S.B. noted that the charge "started with an M" but did not provide the name of the charge.  In the second interview, S.B. initially stated the charge "starts with an M" but then later indicated that "he knew the charge and the circumstances around it, but did not feel comfortable discussing it as there were other people in the room."  (Report at 6.)  The evaluators posited that "[i]t is unclear if he could not describe what behaviors could lead to

a murder charge or if he was reluctant to discuss the behaviors with others near him." (Report at 7.) Again, the public nature of the assessment appears to have compromised the results of the evaluation.

{¶ 32} The report goes on to examine S.B.'s capacity to understand the adversarial nature of the proceedings and the role of court personnel. When asked about the difference between a probation officer and his lawyer, S.B. responded, "[t]hey both want to put you in jail." (Report at 7.) When asked to describe the job of a prosecutor, he stated "[e]veryone has the same job, to send people to jail." (Report at 7.) When asked about the role of the judge he stated, "[s]omeone who puts your ass in jail." (Report at 8.) When asked if the judge would know if he was guilty when he entered the courtroom, S.B. stated, "Yes, because if you're white you go free, and if you're black you go to jail." (Report at 8.) When asked how he could help his lawyer, he stated "kill myself." (Report at 10.) At other points, S.B. stated that he thought his attorney wanted him to go to jail because his attorney told him he was facing 25 years in prison, but S.B. "entertained the possibility that his attorney [did not] want him to go to jail." (Report at 10.) The evaluators concluded that despite these responses, as well as several cases where he responded, "I don't know," S.B. was capable of learning new information based on the education provided during the evaluation. Concerning, the capacity to comprehend and appreciate the consequences that may be imposed from the proceedings, the evaluators, again, indicated that the distractions caused by the public setting of the interview played a role in their conclusion. The report noted, "[S.B.] required education on the plea bargain process, and he appeared to understand most of the information with repetition. Given that this information was provided near the end of our evaluation, it is likely that he could fill in the gaps in his knowledge under different circumstances when there are less distractions, and if he were sufficiently motivated." (Report at 9.)

{¶ 33} Despite our discussion of some of the deficiencies in the report, it is certainly possible that a second evaluation will result in a finding of competency. It is well settled that "mental illness is not necessarily legal incompetency." *State v. Hassler*, 90 Ohio St.3d 108, 125 (2000). However, given the public setting for the evaluation, S.B.'s extensive mental health history, and his repeated comments that the process was rigged against him,

there is a reasonable probability the outcome of the various proceedings were affected by the trial court's failure to permit a second evaluation at the county's expense.

{¶ 34} To be sure, the juvenile court was not put in the best position to succeed in this case. During discussions of the second evaluation, counsel stated that S.B. was not automatically entitled to have a second evaluation at the court's expense and implied that subsequent evaluation was discretionary. (July 12, 2022 Tr. at 3.) The error was compounded in S.B.'s motion as counsel failed to cite R.C. 2152.57(E)(2). Instead, counsel cited R.C. 2152.52 and 2945.40, which concerns a juvenile or adult defendant's qualifications for a competency evaluation. Regardless of any deficiencies by counsel at the hearing or in his motion, the statute expressly requires the court to pay for an indigent defendant's second competency evaluation if the trial court deems it necessary. It is ultimately the juvenile court's responsibility to know the relevant provisions of the revised code. Accordingly, the juvenile court committed plain error by denying S.B. a second evaluation at the county's expense.

{¶ 35} Appellant's first assignment of error is sustained.

**B. Appellant's Second, Third, and Fourth Assignments of Error**

{¶ 36} For ease of discussion, the remaining assignments of error will be addressed together. In S.B.'s second assignment of error, he argues that counsel was ineffective when she stipulated to the contents of a competency assessment during the October 18, 2022 hearing. In S.B.'s third assignment of error, he contends that the trial court erred by failing to appoint a GAL in contravention of R.C. 2152.02(C)(1). In S.B.'s fourth assignment of error, he contends that the trial court erred when it transferred his case to adult court as the stipulation to probable cause and waiver of the hearing was not knowingly, intelligently, and voluntarily given. In light of our resolution to the first assignment of error, we must first consider whether S.B.'s second, third, and fourth assignments of error are moot.

{¶ 37} A reviewing court will not address issues that are deemed moot. *State v. Beach*, 10th Dist. No. 20AP-589, 2021-Ohio-4497, ¶ 21, citing *Croce v. Ohio State Univ.*, 10th Dist. No. 20AP-14, 2021-Ohio-2242, ¶ 16. "The doctrine of mootness is based in the 'case' or 'controversy' language of the U.S. Constitution, Article III, Section 2." (Further citations omitted.) *State v. Johnpillai*, 10th Dist. No. 22AP-612, 2023-Ohio-2745, ¶ 8. Appellate courts lack jurisdiction over a moot question. *Beach* at ¶ 21, citing *Soltesz v. Ohio*

*Dept. of Job & Family Servs.*, 10th Dist. No. 19AP-444, 2020-Ohio-365, ¶ 12. A case is rendered moot when the issue has "become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." (Internal quotations and citations omitted.) *Doran v. Heartland Bank*, 10th Dist. No. 16AP-586, 2018-Ohio-1811, ¶ 12. When an appeal is deemed moot, the case must be dismissed as it no longer presents a justiciable controversy. *Grove City v. Clark*, 10th Dist. No. 01AP-1369, 2002-Ohio-4549, ¶ 11.

{¶ 38} Regarding the third assignment of error, S.B. asserts that the trial court erred by failing to appoint a GAL based on his age, the fact that a GAL had been appointed in another case involving children services, mental health concerns, and his confusion over the proceedings during the November 29, 2022 hearing.

{¶ 39} A GAL is a "person appointed to protect the interests of a party in a juvenile court proceeding." Juv.R. 2(Q). "A GAL provides the juvenile court with a recommendation regarding the child's best interests." *State v. Brown*, 10th Dist. No. 17AP-695, 2018-Ohio-4185, ¶ 33, citing Sup.R. 48(D)(1). However, the appointment of a GAL is not always necessary when the child has a parent protecting their best interests. " 'In theory, then,' as the parent is the 'natural guardian of a child,' the parent and the GAL 'have the same responsibility.' " *Brown* at ¶ 34, quoting *In re Howard*, 119 Ohio App.3d 201, 206 (1st Dist.1997), syllabus. Therefore, when a child is a party, the law only requires the appointment of a GAL under certain circumstances. *See* R.C. 2151.281(A) and Juv.R. 4.

{¶ 40} Here, the mother was alive from the start of the case until her death in October 2022. While the mother was not present at the various proceedings, the competency report indicated that S.B.'s mother had "managed much of his previous legal involvement." (Report at 7.) While S.B. is correct a GAL had been appointed in a prior case, custody had previously been given to Permanent Family Solutions Network, which had since been terminated. (Mar. 8, 2022 Tr. at 6.) At that point, custody returned to S.B.'s mother who was alive for every proceeding until the November 29, 2022 bindover hearing. While a GAL was not initially reappointed at the November hearing, based on S.B.'s difficulty in understanding the bindover process, the juvenile court continued the matter and appointed a GAL "to assist [S.B.] in making the decisions, if any, and/or be ready for

[his] trial." (Nov. 29, 2022 Tr. at 13.) A GAL was present for the next hearing on January 3, 2023.

{¶ 41} Based on our resolution to the first assignment of error, a second competency evaluation must be conducted at the county's expense. Consequently, S.B. returns to the very early stages of the case. As such, whether the trial court erred in failing to appoint a GAL based on S.B.'s mother's failure to attend is moot as it no longer presents an actual genuine, live controversy. *Doran* at ¶ 12 ("The distinguishing characteristic of such issues is that they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." (Internal quotations and citations omitted.) Similarly, any error by the trial court to appoint a GAL after the mother passed away is also moot as those hearings no longer control in this case.

{¶ 42} We would be remiss, however, if we did not clarify the statutory provision at issue. Pursuant to R.C. 2152.02(C)(3), a "child" is be defined as a person under 18 years of age except, in relevant part, "while under eighteen years of age, commits an act that would be a felony if committed by an adult and who is not taken into custody or apprehended for that act until after the person attains twenty-one years of age." Upon review, S.B. met the statutory definition of a "child" as he was under 18 at the time of the alleged offense and taken into custody before he turned 21. The parties do not dispute this point. (Appellant's Brief at 43; Appellee's Brief at 45.) *See also State v. Hudson*, 169 Ohio St.3d 216, 2022-Ohio-1435, ¶ 29 (finding jurisdiction of the general division of common pleas was not invoked as defendant was a juvenile when he allegedly committed the acts in the indictment and was 20 years old when he was arrested for those acts.) Because S.B. meets the statutory definition of a "child" under R.C. 2152.02, and he has no parent, guardian, or legal custodian, *see* R.C. 2151.281, the appointment of a GAL is now required. The juvenile court, either through a recognition of the requirements of R.C. 2152.02(C) or S.B.'s statements during the November 29, 2022 hearing, appears to understand the necessity of a GAL going forward.

{¶ 43} Finally, S.B.'s second and fourth assignment of error concerning whether counsel was ineffective during the competency hearing and whether the trial court erred in transferring S.B.'s case to adult court are also rendered moot. *See* App.R. 12(A)(1)(c) (providing that a court of appeals shall address every assignment of error "[u]nless [it] is

made moot by a ruling on another assignment of error.") Both assignments of error present issues that occurred after the trial court's determination that S.B. was not entitled to a second competency evaluation at the county's expense. Because we are ultimately returning this matter back to the juvenile court to remedy that issue, any errors at the competency hearing or the bindover hearing are moot. Regardless of the outcome, the juvenile court will need to revisit these matters in light of the new competency report.

{¶ 44} Accordingly, S.B.'s second, third, and fourth assignments of error are dismissed as moot as they no longer present a justiciable controversy.

## IV. CONCLUSION

{¶ 45} Having sustained S.B.'s first assignment of error and denied as moot S.B.'s second, third, and fourth assignments of error, we reverse and remand this judgment back to the Franklin County Court of Common Pleas. This case is remanded back to the Franklin County Court of Common Pleas with instructions to vacate the judgment and transfer jurisdiction to the juvenile court to proceed in accordance with this opinion and in compliance with R.C. 2152.57(E)(2) and 2152.51-2152.59.

*Judgment reversed;*
*cause remanded.*

DORRIAN and BEATTY BLUNT, JJ., concur.

_____