[Cite as *State v. Maynard*, 2025-Ohio-5379.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 CA 00024 |
| Plaintiff - Appellee / Cross-Appellant | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Licking County, Case No. 2024 CR 00699 |
| DANA L. MAYNARD, | Judgment:  Affirmed |
| Defendant - Appellant / Cross-Appellee | Date of Judgment:  December 1, 2025 |

BEFORE: William B. Hoffman; Kevin W. Popham; David M. Gormley, Judges

APPEARANCES: Kenneth W. Oswalt, Licking County Prosecuting Attorney's Office, Newark, Ohio, for Plaintiff-Appellee/Cross-Appellant; Christopher D. Brigdon, Thornville, Ohio, for Defendant-Appellant/Cross-Appellee.

*Gormley, J.*

{¶1}    Appellant Dana Maynard argues in this appeal that the evidence presented at his trial was insufficient to support his convictions for obstructing official business and operating a vehicle under the influence of alcohol.  Because we conclude that sufficient evidence was presented at Maynard's bench trial on those charges, and because we conclude that our ruling on that issue in turn moots the State's cross-appeal, we affirm the trial court's judgment.

**The Key Facts**

{¶2}    One evening in October 2024, Trooper Wathey from the Ohio State Highway Patrol was traveling east on Interstate 70 when he noticed a stationary vehicle

at the roadside with its hazard lights on.  Trooper Wathey initiated a welfare-check traffic stop.

{¶3}  Dana Maynard and his brother were standing next to the stopped vehicle, and the brother was pouring gas from a canister into the vehicle's tank.  Trooper Wathey spoke with the brother and determined that Dana Maynard had been driving the vehicle that evening and had run out of gas.  And the trooper's observations of and interactions with Maynard in the minutes that followed led the trooper to conclude that Maynard was intoxicated.  Maynard was placed under arrest.

{¶4}  When Maynard would not consent to any chemical tests for alcohol consumption, troopers took him to a nearby hospital, and they obtained a search warrant from a judge for a blood draw.  Maynard then refused to cooperate with the blood draw, requiring Trooper Wathey and one of his colleagues, as well as hospital staff, to hold Maynard down while a phlebotomist withdrew some blood from him.  Because Maynard had refused to cooperate, the blood draw took more time for the hospital's staff to complete than a typical blood draw.

{¶5}  Soon thereafter, Maynard was indicted on one third-degree-felony count of operating a vehicle under the influence of alcohol (OVI) under R.C. 4511.19(A)(1)(a) (alleging that he had earlier been convicted on a felony OVI charge) and one second-degree-misdemeanor count of obstructing official business.  It was a month later when the State received the lab report for Maynard's blood test from the Ohio State Highway Patrol.  And it was another two months until a superseding indictment was issued containing the original charges plus a second F3 charge of operating a vehicle under the

influence of alcohol under R.C. 4511.19(A)(1)(f) (again listing the charge as a second felony OVI offense and alleging a whole-blood test result above the .17 high-test limit).

{¶6} Two days before trial, Maynard filed a motion to sever the OVI counts in the indictment and a motion to suppress the results of the blood test. The following day, the trial court, without waiting for a response from the State, granted Maynard's motion to sever the OVI counts.

{¶7} After a bench trial on the two initial charges only, the trial judge found Maynard guilty on both the OVI charge and the obstructing-official-business charge. At a sentencing hearing, the trial judge imposed a prison term of 36 months on the OVI charge as well as a concurrent jail term of 30 days on the misdemeanor obstructing charge. The State then dismissed the high-test OVI charge.

{¶8} Maynard now appeals his convictions on both the OVI charge and the obstructing-official-business charge, and the State appeals the trial court's decision to sever the two OVI charges (and its decision to do so without waiting for the State to be heard on Maynard's severance motion) as well as the trial court's decision barring the State from presenting evidence about the blood-test results at the bench trial.

**Maynard's Convictions Were Supported by Sufficient Evidence**

{¶9} In his first assignment of error, Maynard argues that the State failed to present sufficient evidence that he operated a vehicle while under the influence of alcohol. In his second assignment of error, Maynard argues that the State failed to present sufficient evidence that his actions hampered or impeded a public official's performance of lawful duties. Because both of Maynard's assignments of error focus on the sufficiency of the evidence presented at his trial, we will address them together.

{¶10} "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Jenks* at paragraph two of the syllabus. A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

*The OVI Conviction*

{¶11} In his challenge to the evidence supporting his conviction for operating a vehicle under the influence of alcohol, Maynard claims that the State failed to present sufficient evidence that any operation of the vehicle by him occurred contemporaneously with his having been under the influence of alcohol.

{¶12} To prove the R.C. 4511.19(A)(1)(a) OVI charge, the State was of course required to introduce evidence that Maynard operated a vehicle while under the influence of alcohol. The term "operate" means "to cause or have caused movement of a vehicle." R.C. 4511.01(HHH). And we have explained that the operation of a vehicle in an OVI case "is a fact that may be proved by circumstantial evidence, which inherently possesses the same probative value as direct evidence." *State v. Anthony*, 2016-Ohio-2905, ¶ 21 (5th Dist.), citing *Jenks*, 61 Ohio St.3d at 272–273. Relevant circumstantial evidence can

include "the location of the vehicle, a defendant's status in relation to the vehicle, and the absence of other individuals in the same area." *State v. Breucker*, 2021-Ohio-31, ¶ 10 (9th Dist.).

{¶13} Although no witness at the trial testified to having seen Maynard drive the vehicle on the October 2024 evening in question, abundant circumstantial evidence supports the State's view on the question. Presented at the trial was evidence that Maynard was the owner of the vehicle and that his brother was putting gas into the vehicle's tank when the trooper first arrived. That brother testified at the trial, and he told the judge that Maynard had called him around 9:00 p.m. with the news that his vehicle had run out of gas. Maynard, according to trial testimony, told his brother the location of his vehicle and asked the brother to bring him some fuel.

{¶14} And the brother testified that he "couldn't really tell . . . on the phone . . . what [Maynard's] condition was," but he explained that he "found out more what his condition was after [he] got there." When the brother arrived, he saw Maynard sitting in the vehicle. According to the brother's trial testimony, when Maynard then stepped out of the vehicle, he was unsteady on his feet, stumbled around, and slurred his speech. Based on what he had observed at the roadside, the brother said at the trial that he "figured that [Maynard] was probably intoxicated."

{¶15} As for Trooper Wathey, he testified that Maynard was standing outside the vehicle by the time he arrived, and the trooper noted that Maynard appeared to be using the vehicle to help him maintain his balance. When he interacted with Maynard, Trooper Wathey could see that Maynard's eyes were bloodshot, his speech was slow and slurred, his movements were lethargic, and a strong odor of alcohol was on his breath. The

trooper also testified that Maynard exhibited poor dexterity when he tried to remove his driver's license or identification card from his wallet, and the trooper explained, too, that he later observed containers of alcohol in the vehicle, some of which were empty or partially empty, and at least one of which was still cold to the touch.

{¶16} Although Maynard at the roadside denied having driven the vehicle at all that day, he declined then to provide to the trooper any information about how either he or his vehicle had come to be stopped at the side of the road on Interstate 70. Notably, too, Trooper Wathey and a sergeant from the highway patrol (who arrived at the scene after Maynard had been placed under arrest) both testified at the trial that the vehicle's engine was still warm to the touch when they were at the scene, which suggested to them that it had been recently driven.

{¶17} No evidence suggesting that anyone other than Maynard had driven the vehicle was offered at the trial. Our court and others have found some significance in the inferences that can be drawn when all evidence — albeit circumstantial — points in just one direction on the possible identity of a vehicle's operator. *See Anthony*, 2016-Ohio-2905, at ¶ 23 (5th Dist.) ("No one else at the scene claimed to have driven the SUV to the location where it broke down"); *State v. Wayman*, 2019-Ohio-1194, ¶ 19 (12th Dist.), quoting *State v. Schultz*, 2008-Ohio-4448, ¶ 25 (8th Dist.) ("'[A] person who is found passed out in his vehicle on the side of the highway' may be convicted of operating a vehicle while under the influence of alcohol or drugs 'because the jury could infer that the vehicle was moved to that location'"). Furthermore, the trial judge heard evidence that Maynard had admitted to having driven the vehicle that day not only when Maynard called his brother from the roadside to ask him to bring gas to the scene but also in a recorded

phone call between Maynard and his brother the next day while Maynard was being held in the local jail.

**{¶18}** Maynard suggests in his appellate brief here that perhaps he drank alcohol only after his car had run out of gas and come to rest on the shoulder of the interstate. No testimony supporting that theory was presented at the trial, though, and our focus in evaluating a sufficiency-of-the-evidence claim is on the evidence that was presented rather than on unexplored and unsupported theories of innocence that might have been presented. *See State v. Cummings*, 2024-Ohio-6106, ¶ 23 (10th Dist.) ("Sufficiency of the evidence is a legal standard that tests whether the *evidence introduced at trial* is legally sufficient to support a verdict") (emphasis added and citation omitted); *State v. Herrera*, 2022-Ohio-4769, ¶ 26 (6th Dist.) (same).

**{¶19}** In any event, Maynard's theory that he engaged in innocent drinking after any driving had occurred is contradicted by statements that he himself made at the roadside. As both Trooper Wathey and his sergeant testified, Maynard, during the roadside encounter, repeatedly denied having consumed any alcohol that day.

**{¶20}** "When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. A reasonable trier of fact could find, beyond a reasonable doubt, that Maynard operated the vehicle and drove it to the roadside location where the trooper found it and that while operating that vehicle, Maynard was in the intoxicated state that his brother and Trooper Wathey described in their testimony.

**{¶21}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable trier of fact could have found beyond a reasonable doubt that Maynard operated the vehicle while under the influence. We therefore hold that the State met its burden of proof on each element of the OVI offense.

*The Obstructing-Official-Business Conviction*

**{¶22}** In his challenge to the evidence supporting his conviction for obstructing official business, Maynard claims that the State failed to present sufficient evidence that his actions hampered or impeded a public official in the performance of lawful duties.

**{¶23}** To prove the R.C. 2921.31(A) charge of obstructing official business, the State was required to introduce evidence that Maynard, without privilege, did an act that hampered or impeded a public official in the performance of that official's lawful duties and that Maynard's purpose was — in the words of the statute — to "prevent, obstruct or delay" the public official's performance of "any authorized act within the public official's official capacity." The offense was charged as a second-degree misdemeanor, so no additional evidence about Maynard having created a risk of physical harm to a person under R.C. 2921.31(B) was needed.

**{¶24}** "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." *State v. Wellman*, 2007-Ohio-2953, ¶ 12 (1st Dist.). "The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence." *In re Payne*, 2005-Ohio-4849, ¶ 15 (1st Dist.), quoting *State v. Hardin*, 16 Ohio App.3d 243, 245 (10th Dist. 1984).

**{¶25}** After Maynard was arrested at the roadside for the OVI offense, Trooper Wathey asked Maynard, in accordance with R.C. 4511.191(A)(5)(a), to submit to a chemical test to assist the trooper in determining the amount of alcohol, if any, in Maynard's body. When Maynard refused to submit to a chemical test, he was advised that law-enforcement officers "may employ whatever reasonable means are necessary" to procure a blood sample from him. R.C. 4511.191(A)(5)(b). Law-enforcement officers then sought and secured a search warrant for Maynard's blood. With the signed warrant in hand, the trooper, in accordance with R.C. 4511.19(D)(1)(b), enlisted the help of a "qualified . . . phlebotomist" to perform the blood draw.

**{¶26}** At the trial, the State presented the testimony of Hayle Hanzey – a phlebotomist at Licking Memorial Hospital — who conducted Maynard's blood draw. When Ms. Hanzey entered the hospital room where Maynard was seated, she first inquired whether Maynard was consenting to the blood draw. When she learned that Maynard was not consenting, she asked to see the search warrant. Once the signed search warrant had been shown to her, Ms. Hanzey prepared to carry out the blood draw.

**{¶27}** Hanzey explained in her trial testimony that officers had to hold Maynard down because he was agitated and violent as she tried to complete her work. Because Maynard struggled so much during the blood draw, his vein would "blow," she told the judge, and so she was unable to obtain a blood sample as quickly as she typically would. Hanzey testified that Maynard "had good veins," and she said that she typically would have been able to draw the blood "in under two minutes," but Maynard's blood draw "took a little while because he was struggling."

**{¶28}** "To convict a defendant of obstructing official business, the state does not need to prove that the defendant successfully prevented an officer from performing his or her official duties; rather, the state need only introduce evidence demonstrating the defendant 'actually interfered with the performance of an official duty and made it more difficult.'" *State v. Alexander*, 2017-Ohio-5507, ¶ 21 (12th Dist.), quoting *State v. Standifer*, 2012-Ohio-3132, ¶ 28 (12th Dist.).

**{¶29}** Interference with the execution of a warrant can be sufficient to support a conviction for obstructing official business. *See State v. Santiago*, 2016-Ohio-547, ¶ 18 (12th Dist.) (the intentional hindrance of the execution of an arrest warrant is an act that constitutes obstructing official business). *See also State v. Grooms*, 2005-Ohio-706, ¶ 21 (10th Dist.) (repeated harassment and yelling six inches from officer's face impeded his ability to complete paperwork and was sufficient evidence to support conviction for obstructing official business); *State v. Overholt*, 1999 WL 635717, *4 (9th Dist. Aug. 18, 1999) (interference with an officer's attempts to complete an arrest as well as profane outbursts were sufficient to constitute offense of obstructing official business).

**{¶30}** In this case, Maynard interfered with the performance of the official duty of executing the search warrant for his blood. R.C. 4911.19(D)(1)(b) requires that law-enforcement officers rely on the services of trained medical or scientific personnel to conduct any blood draws in OVI cases, and Maynard's uncooperativeness with the phlebotomist enlisted by the trooper slowed down that person's ability to obtain the blood sample from Maynard. The delay caused by Maynard's obstreperous conduct in turn lengthened the overall time needed by law-enforcement officers to obtain and transport the blood sample for testing.

**{¶31}** Maynard's actions, in our view, "constituted a substantial impediment, even though not a successful one, to performance by the police." *State v. Gordon*, 9 Ohio App.3d 184, 188 (1st Dist. 1983) (defendant's act of misdirecting officers who were pursuing a felon and causing a 15-minute disruption of the officers' progress toward apprehending the felon was sufficient to warrant conviction of obstructing official business). *See also Wellman*, 2007-Ohio-2953, at ¶ 18 (1st Dist.) ("[w]e do not hold that any finite period of time constitutes a 'substantial stoppage,' be the delay occasioned by the interference thirty seconds or two minutes") (citation omitted).

**{¶32}** Our review of the record shows that a reasonable trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the State did prove, beyond a reasonable doubt, all of the elements of obstructing official business. In short, we find that the evidence was sufficient to support Maynard's conviction on that charge.

**The State's Cross-Appeal is Moot**

**{¶33}** In its cross-appeal, the State argues that the trial court abused its discretion not only by granting Maynard's motion to sever the two OVI counts but also by granting that severance motion without waiting for a response from the government. The State argues, too, that the trial court abused its discretion by ruling that Maynard's blood-test results were not relevant or admissible at the trial on the R.C. 4511.19(A)(1)(a) charge.

**{¶34}** Even were we to agree with the State that the trial court erred, though, our judgment — that is, the outcome in this case — would not change. Our conclusion that the State presented sufficient evidence at the trial to support Maynard's convictions on the OVI-impaired charge and the obstructing-official-business charge means that

Maynard's convictions in the case will stand. The State has achieved what we presume was the government's desired outcome in this appeal: the affirmance of Maynard's convictions.

**{¶35}** No ruling on the State's cross-appeal could lead to a more favorable outcome for the government in its prosecution of this defendant. That means, of course, that the cross-appeal is moot. *See Maurent v. Spatny*, 2025-Ohio-5002, ¶ 2 ("An appeal is moot when a favorable judgment will not secure effective relief for the prevailing party"); *Matter of N.Q.*, 2024-Ohio-1296, ¶ 8 (2d Dist.) ("Under the mootness doctrine, American courts will not decide cases where an actual legal controversy no longer exists between the parties").

**{¶36}** And we have no jurisdiction to hear a moot appeal. *See State v. White*, 2024-Ohio-4654, ¶ 17 (1st Dist.) ("This court lacks jurisdiction to consider the merits of a moot appeal"); *State v. S.B.*, 2024-Ohio-2080, ¶ 37 (10th Dist.) ("When an appeal is deemed moot, the case must be dismissed as it no longer presents a justiciable controversy").

**{¶37}** To be sure, the "capable of repetition, yet evading review" doctrine is "an exception to the general rule against deciding moot issues." *State ex rel. Morrison v. Beck Energy Corp.*, 2013-Ohio-356, ¶ 66 fn. 5 (9th Dist.). That doctrine has been limited in Ohio, though, to circumstances in which there is "a reasonable expectation that the issue will arise again between the same parties." *State ex rel. Casanova v. Lutz*, 2023-Ohio-1225, ¶ 4. *See also M.R. v. Niesen*, 2022-Ohio-1130, ¶ 12 ("It is not enough for an issue to be capable of repetition between *some* parties; the issue must be capable of repetition between the 'same' parties").

**{¶38}** We readily conclude that whatever lingering concerns the State may have about the trial judge's handling of Maynard's pretrial motion to sever the OVI charges as well as that court's exclusion of the blood-test results at Maynard's trial on an OVI-impaired charge under R.C. 4511.19(A)(1)(a), no reasonable likelihood exists that those same concerns will arise in any dispute between the State and defendant Maynard. The capable-of-repetition-yet-evading-review exception to the mootness doctrine therefore does apply not to the State's cross-appeal. That cross-appeal is moot, and we decline to address it.

**{¶39}** For the reasons explained above, the judgment of the Court of Common Pleas of Licking County is affirmed. Costs are to be paid by Appellant/Cross-Appellee Dana L. Maynard.

By: Gormley, J.;

Hoffman, P.J. and

Popham, J. concur.